## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KANOPY HOLDINGS, INC.**, a Delaware corporation, and **CHRISTOPHER RORK**, an individual residing in the State of Georgia | **CASE NO.**_____ |
| Plaintiffs, | **BREACH OF CONTRACT; FRAUD; FRAUDULENT MISREPRESENTATION; CONVERSION; FRAUD IN SALES OF SECURITIES; BREACH OF FIDUCIARY DUTY; TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS; INDEMNITY; PUNITIVE DAMAGES; ATTORNEYS FEES** |
| v. | |
| **WL GROUP LTD,** a Hong Kong limited Company, and **PO CHIU YUEN** (aka Larry Yuen) an individual residing in the People's Republic of China, and **WING LUEN KNITTING FACTORY LTD.**, a limited company under the laws of the People's Republic of China. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## PLAINTIFF KANOPY HOLDINGS, INC. AND CHRISTOPHER RORK'S COMPLAINT

Plaintiffs, **KANOPY HOLDINGS, INC.**, a Delaware corporation, and

**CHRISTOPHER RORK**, an individual residing in the State of Georgia

("Plaintiffs"), by and through the undersigned counsel, hereby files this Complaint

("Complaint") against Defendants **WL GROUP LTD,** a Hong Kong limited

Company, and Po Chiu Yuen (aka Larry Yuen) an individual residing in Hong Kong,
and **WING LUEN KNITTING FACTORY LTD.**, a limited company under the
laws of the People's Republic of China (collectively "Defendants"), and states as
follows:

## PRELIMINARY STATEMENT

This matter arises because Defendants have engaged in intentional, willful,
and unlawful acts that have significantly and irreparably harmed and continue to
harm Plaintiffs.  Specifically, Defendants have jointly breached the series of
agreements by and between the parties, breached their fiduciary duties and duty of
loyalty to Kanopy Holdings, Inc., Kanopy Baby, Inc., and Kanopy International Ltd
while a director for each entity, intentionally and willfully committed fraud and
fraudulent misrepresentation in their representations and warranties of sale of their
respective shares of Kanopy Baby, Inc. and Kanopy International Ltd, including
concealing, delaying, and/or otherwise interfering with the disclosure, filing, and
reporting, and transfer of its shares, company records, securities, bank accounts, and
other materials, willfully and intentionally converted company accounts and revenue
to its own accounts, and tortiously interfered with Plaintiff business relationships
and investment transactions. Based upon Defendants' actions, the underlying third
party investment of $4,000,000 into Kanopy Holdings (of which formed the basis

for the Parties' agreements, herein) was terminated.   The termination of the investment significantly impacted Kanopy Holdings' enterprise value by no less than $26,000,000, leaving it with a liquidation value of $2,000,000.

In light of the foregoing, Plaintiffs bring this action for temporary restraining order. ("TRO"), preliminary and permanent injunctive relief based on claims for breach of contract, breach of fiduciary duty, tortious interference with business relations.  This action also seeks compensatory, punitive, and exemplary damages, attorney's fees, and or other appropriate relieve for the willful and malicious injuries caused by Defendants' conduct, which upon information and belief was intentionally targeted at the Plaintiffs and busines with the intent to cause it financial harm.

## Parties

1.     Plaintiff, Kanopy Holdings, Inc. ("Kanopy Holdings") is a Delaware corporation, registered to do business in the State of Georgia as Kanopy Holdings DE, Inc., and has a principal place of business at 6767 Peachtree Industrial Blvd., Peachtree Corners, Georgia 30092.  Kanopy Holdings is the parent entity of the related parties Kanopy Baby, Inc., a Delaware corporation, registered to do business in the State of Georgia, and has a principal place of business at 6767 Peachtree Industrial Blvd., Peachtree Corners, Georgia 30092 ("Kanopy Baby"), and Kanopy International, Ltd. a Hong Kong limited company, with a principal address of 9/F

Ka To Factory Building, 2 Cheung Yue Street, Cheung Sha Wan, Kowloon, Hong Kong.

2.      Plaintiff, Christopher Rork ("Rork") is a resident of the State of Georgia, DeKalb County.

3.      Defendant, WL Group Ltd. ("WL Group") is a Hong Kong limited company with a principal place of business at 9/F Ka To Factory Building, 2 Cheung Yue Street, Cheung Sha Wan, Kowloon, Hong Kong.

4.      Defendant, Po Chiu Yuen (aka Larry Yuen, hereinafter referred to as "Yuen") an individual with an address of 25B, Block 1, Palatial Coast, Siu Lam, New Territories, Hong Kong.

5.      Defendant, Wing Luen Knitting Factory, Ltd., a limited formed under the laws of the People's Republic of China ("***Wing Luen***").

## Jurisdiction and Venue

6.      An actual controversy exists between the parties, and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest, attorneys' fees, and costs.

7.      This Court has proper jurisdiction of the subject matter of this action under 28 U.S.C. §1331 in that this action arises under the laws of the United States.

This Court has supplemental jurisdiction over this action pursuant to O.C.G.A. § 9-10-91(1).

8.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants have conducted ongoing business in this District, a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District and the subject agreements were executed in the District.  Further, Defendants actively availed themselves in the State of Georgia, having acted as a director of Kanopy Baby, Inc., personally guaranteed Kanopy Baby Inc.'s lease in the jurisdiction, and providing services to Kanopy Baby, Inc. in the State of Georgia.

9.      Venue and jurisdiction are proper in that the Shareholder Purchase Agreement ("Share Purchase Agreement") dated October 9, 2019, between Defendants and Rork, expressly provides that the state and federal courts of the State of Georgia shall have exclusive jurisdiction to entertain any actions arising under the Share Purchase Agreement and all related transaction documents.

## FACTUAL ALLEGATIONS

### I.      The Company Formations.

10.      On or about, June 29, 2017, WL Group, Yuen, and Rork formed Oliver & Rain, Inc. under the laws of the State of Delaware, subsequently changing the

name to Kanopy Baby, Inc. on or about August 16, 2017, and establishing its principal business office 165 Ottley Drive NE, Suite 208, Atlanta, Georgia 30324.

11.    As part of the formation of Kanopy Baby, on or about June 29, 2017, Rork and Yuen were unanimously appointed to the Board of Directors.

12.    Kanopy International was incorporated in Hong Kong on or about May 23, 2018 and is primarily engaged in the sale of private label childrenswear brands to a leading e-commerce retailer in the United States.

13.    As part of the formation of Kanopy International, on or about June 29, 2018, Yuen and WL Group appointed themselves to the Board of Directors, with Yuen the Chairman.

14.    Upon fact and belief, the parties agreed that as part of the formation of Kanopy International, Defendants were to issue certain shares to Rork in the amount of 300 shares, with Defendants'' holding 6,000 shares, respectively. Despite the agreement, Defendants failed to issue the shares to Rork, or disclose to Rork that it had not issued the agreed shares to Rork.

15.    In addition, upon fact and belief, Defendants agreed that, as the directors of Kanopy International, it would issue certain shares of stock to Sree Santhosh Garments Ltd ("SSG"), a limited company under the laws of India, in the amount of 23 shares, as part of SSG's investment in Kanopy International in the

amount of $500,000 USD (a combination of cash payment and discharge of merchandise capital advances, hereinafter referred to as the "SSG Investment"). Despite having accepted $100,000 in cash payments from SSG and acknowledging the merchandise capital advances, Defendant's failed to issue any shares to SSG, or disclose to SSG that it had not issued the agreed shares to SSG.

16.     Upon information and belief, on or about May 16, 2018 Defendants issued only 2 shares of stock in Kanopy International: one (1) share to Yuen, and one (1) share to WL Group.

## II.     Kanopy Restructure, Initial Share Exchange, and Share Purchase Agreements.

### a.  Kanopy Restructure

17.     Between October 2018 and May 2019, the Defendants and Rork engaged in discussions regarding the corporate restructure of Kanopy International and Kanopy Baby as subsidiary entities of a newly formed holding company, Kanopy Holdings, Inc.

18.     As part of the restructure, the parties agreed to exchange their respective shares in Kanopy International and Kanopy Baby for shares of Kanopy Holdings.

19.    At no time during the restructure discussions did Defendants disclose to Rork that Defendants had not issued his shares or those of SSG in Kanopy International.

20.    Prior to the restructure, in or around May 2019, Defendants informed Rork that they intended to withdraw from Kanopy Baby, Kanopy International due to a vendor (Carter's Inc.) requirement that it divest its majority interest in competing brands.

21.    Defendants and Rork engaged in several discussions during May 2019 regarding Defendants' planned withdrawal.  During such time, Rork identified a potential investor, Zhejiang Semir Garment Co. Ltd ("Semir"), for Defendants' shares.

22.    Upon information and belief, Defendants refused to engage in the sale of its shares directly to Semir, opting for Rork and Kanopy Holdings to engage in the sale itself.

23.    As such, in an effort to save Kanopy Baby, Kanopy International, and Kanopy Holdings' businesses, Defendants offered to sell to Rork, following the transfer of its shares to Kanopy Holdings through a share exchange agreement, the majority interest in Kanopy Holdings.  Rork conditionally agreed to the Defendants' offer, subject to entering into a Share Purchase Agreement, and those term contained

therein.  The parties executed a binding framework agreement dated May 19, 2019 (the "Kanopy Framework Agreement").

24.     Under the Kanopy Framework Agreement, Defendants agreed to enter into a series of transactions whereby Defendants would: (i) in exchange for the payment of $1,000,000 USD by Rork (to be drawn from a promissory note to be issued by Rork); and (ii) in exchange for the payment of $2,000,000 (to be drawn from a convertible note issued by Kanopy Holdings), sell all of its shareholdings in Kanopy Baby, Kanopy International, as exchanged through its share exchange agreement with Kanopy Holdings, less the retention of 7.5% shares in Kanopy Holdings (the "Purchase Price").  Defendants agreed that the Purchase Price satisfied all investment capital and other loans provided by Defendants to Kanopy Baby and Kanopy International, in the amount equal to $3,208,909 USD.

25.     Following the execution of the Kanopy Framework Agreement, on or about July 17, 2019, the parties formed Kanopy Holdings, Inc., a Delaware corporation.

### b. Defendants Share Exchange Agreement.

26.     On or about October 9, 2019, Kanopy Holdings entered into a share exchange agreement with WL Group and Yuen, wherein WL Group and Yuen agreed to exchange one hundred percent (100%) of their respective shares in Kanopy

Baby and Kanopy International for shares in Kanopy Holdings (the "**Share Exchange Agreement**"), a true and accurate copy is attached hereto as **Exhibit A**.

27. As part of the Share Exchange Agreement closing conditions, Defendants were obligated to deliver to Kanopy Holdings the original Kanopy Baby and Kanopy International share certificates evidencing the sale and exchange of their respective shares, as well as all appropriately executed transfer documents in favor of Kanopy Holdings, to effectively transfer to Kanopy Holdings the right, title, and interest in and to the sold shares.

28. As an inducement for Kanopy Holdings to enter into the Share Exchange Agreement, Defendants represented and warranted to Kanopy Holdings in pertinent part that:

> 4.2   **Authorization; Enforceability**. All corporate action on the part of WL Group and each of its officers, directors, and stockholders necessary for the authorization, execution and delivery of this Agreement, the performance of all obligations of the WL Group hereunder and thereunder, and the authorization, issuance (or reservation for issuance), sale and delivery of the WL KI Stock and WL KB Stock being sold hereunder has been taken or will be taken prior to the Closing. WL Group have the capacity to execute, deliver and perform this Agreement. This Agreement, and all other documents executed and delivered by WL Group pursuant to this Agreement have been duly executed and delivered and constitute the legal, valid and binding obligations of WL Group, as applicable, assuming the due authorization, execution and delivery of this Agreement by the Company, enforceable in accordance with their respective terms, except to the extent that their enforcement is limited by bankruptcy, insolvency, reorganization or other laws relating to or affecting the

enforcement of creditors' rights generally and by general principals of equity.

4.3     **No Violation or Conflict**. To the Knowledge of WL Sellers, the execution, delivery and performance of this Agreement and the other documents contemplated hereby by WL Group and L Yuen, and the consummation by WL Sellers of the transactions contemplated hereby: (a) do not violate or conflict with any provision of applicable law or regulation, or any writ, order or decree of any court or governmental or regulatory authority, or any provision of WL Group's memorandum and articles of association; and (b) do not and will not, with or without the passage of time or the giving of notice, result in the breach of, or constitute a default (or an event that with notice or lapse of time or both would become a default), cause the acceleration of performance, give to others any right of termination, amendment, acceleration or cancellation of or require any consent under, or result in the creation of any lien, charge or encumbrance upon any property or assets of WL Group pursuant to any instrument or agreement to which WL Group is a party or by which WL Group or its properties may be bound or affected, other than instruments or agreements as to which consent shall have been obtained at or prior to the Closing.

4.4     **Consents of Governmental Authorities and Others**. To the Knowledge of WL Sellers, no consent, approval, or authorization of, or registration, qualification or filing with governmental or regulatory authority, or any other Person, is required to be made by WL Sellers in connection with the execution, delivery, or performance of this Agreement by WL Sellers, as applicable, or the consummation by WL Sellers of the transactions contemplated hereby, excluding the execution, delivery, and performance of this Agreement by the Company.

4.7     **Compliance**. To the Knowledge of WL Sellers, WL Sellers is in compliance with all ordinances, regulations, judgments, rulings, orders and other requirements imposed by governmental authorities or agencies applicable to WL Sellers and its assets and properties, except where such noncompliance would not have a Material Adverse Effect on WL Sellers. To the Knowledge of WL Sellers, it is not subject to

any judicial, governmental, or administrative inquiry, investigation, order, judgment, or decree.

4.8     **Charter, Bylaws and Corporate Records**. The Company has been provided with true, correct, and complete copies of (a) the memorandum and articles of association of WL Group, as amended and in effect on the date hereof and (b) the minute book of WL Group (containing all corporate proceedings from the date of incorporation). Such minute book contains accurate records of all meetings and other corporate actions of the board of directors, committees of the board of directors, incorporators, and shareholders of WL Group from the date of its incorporation to the date hereof which were memorialized in writing.

4.9     **Kanopy International Capitalization**. As of the date of this Agreement, the authorized capital stock of Kanopy International Limited is 10,000 consisting of Ten Thousand (10,000) ordinary shares at HK$1 per share. All of the shares of WL KI Stock have been duly authorized, are validly issued, and are fully paid and non-assessable. There are no dividends which have accrued or been declared but are unpaid on the capital stock of WL KI Stock.

4.11    Rights, Warrants, Options. Except as provided in this Section 4.11, there are no outstanding: (a) securities or instruments convertible into or exercisable for any of the capital stock or other equity interests of Kanopy International Limited; (b) options, warrants, subscriptions or other rights to acquire capital stock or other equity interests of Kanopy International Limited; or (c) commitments, agreements or understandings of any kind, including employee benefit arrangements, relating to the issuance or repurchase by Kanopy International Limited of any capital stock or other equity interests of Kanopy International Limited, or any instruments convertible or exercisable for any such securities or any options, warrants or rights to acquire such securities.

4.12    **Absence of Undisclosed Liabilities**. Other than as disclosed in the Financial Statements, Kanopy International Limited does not have any Liabilities. None of WL Sellers has any Knowledge of any circumstances, conditions, events, or arrangements which may

hereafter give rise to any Liabilities of Kanopy International Limited.

4.13    **Disclosure**. No representation or warranty of WL Sellers contained in this Agreement, and no statement, report, or certificate furnished by or on behalf of WL Sellers to the Company pursuant hereto or in connection with the transactions contemplated hereby, contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein not misleading or omits to state a material fact necessary in order to provide the Company with full and proper information as to the business, financial condition, assets, liabilities, or results of operation of Kanopy International Limited and the value of the properties or the ownership of Kanopy International Limited.

(*See* Exhibit A, Sec. 4).

29.    Defendants further,  agreed to jointly and severally indemnify and hold harmless Kanopy Holdings against "any and all claims, losses, penalties, fines, forfeitures, costs, including reasonable and necessary legal fees (irrespective of whether or not incurred in connection with the defense of any actual or threatened action, proceeding, or claim), judgments, and any other costs, fees and expenses (collectively, "Losses") that the [Kanopy Holdings] suffers or may sustain in any way related to or in connection with any: (i) fraud, negligence or willful misconduct by WL Sellers in relation to the transactions set out in Article II of this Agreement, or (ii) a breach of in relation to the representations or warranties or other obligations of WL Sellers contained in this Agreement or any Exchange Documents." (*See Id.* at Sec. 5.6).

30.    Defendants acknowledged and agreed that as a condition precedent to any obligation by Kanopy Holdings, or the closing of the Share Exchange Agreement, Defendants were obligated to fulfill those conditions precedent in Section 6.4 of the Share Exchange Agreement, which included the following:

(a)    <u>Representations and Warranties True</u>. Each of the representations and warranties of WL Sellers contained herein or in any certificate or other document delivered pursuant to this Agreement or in connection with the transactions contemplated hereby shall be true and correct in all material respects as of the Closing Date with the same force and effect as though made on and as of such date.

(b)    <u>Performance</u>. WL Sellers shall have performed and complied in all material respects with all of the agreements, covenants and obligations required under this Agreement to be performed or complied with by it on or prior to the Closing Date.

(c)    <u>No Material Adverse Change</u>. Except as expressly permitted or contemplated by this Agreement, no event or condition shall have occurred which has adversely affected or may adversely affect in any respect the condition (financial or otherwise) of WL Sellers between the date of execution of this Agreement and the Closing Date.

(d)    <u>WL Group's Certificates</u>. WL Sellers and the WL Representative shall have delivered a certificate or Records addressed to the Company, dated the Closing Date, certifying that the conditions specified in Sections 6.4(a), (b) and (c) above have been fulfilled.

(e)    <u>Consents</u>. WL Sellers shall have obtained all authorizations, consents, waivers, and approvals as may be required to consummate the transactions contemplated by this Agreement, including but not limited to those with respect to any material agreement of WL Sellers.

(*See Id.* at Sec. 6.3).

31.     Defendants further acknowledged and agreed under Section 6.5 that Defendants were obligated to "use their respective best efforts in good faith to take or cause to be taken as promptly as practicable all reasonable actions that are within its power to cause to be fulfilled those of the conditions precedent to its obligations or the obligations of the other parties to consummate the transactions contemplated by this Agreement that are dependent upon its actions, including obtaining all necessary consents, authorizations, orders, approvals and waivers." (*See Id.* at Sec. 6.5).

32.     Defendants further acknowledged and agreed that irreparable damage would occur in the event that any of the provisions of the Share Exchange Agreement were not performed in accordance with their specific terms or were otherwise breached. (*See Id.* at Sec. 7.10).

33.     Additionally, Defendants acknowledged and agreed that Defendants were obligated to "deliver any and all other instruments or documents reasonably required to be delivered pursuant to, or necessary or proper in order to give effect to, all of the terms and provisions of this Agreement including, without limitation, all necessary stock powers and such other instruments of transfer as may be necessary or desirable to transfer full and complete ownership of the Sold WL Group Stock to

the Company or the issuance of the applicable Securities to the WL Group or its nominee for the Consideration, as the case may be, free and clear of any liens or encumbrances." (*See Id.* at Sec. 7.15).

### c. Defendants' Share Purchase Agreement and Promissory Note.

34.     On or about October 9, 2019, Plaintiffs and Defendants entered into a Share Purchase Agreement ("Share Purchase Agreement"), a true and accurate copy of which is provided as **Exhibit B**.

35.     Under the Share Purchase Agreement, Rork agreed to pay to Defendants the sum of $900,000 USD, based upon a purchase price of $1,000,000 USD, less $100,000 USD owed to Rork by Defendants (the "Rork Purchase Price"). (*See Id.* at Sec. 2.2).

36.     The parties agreed that the Rork Purchase Price would be paid at the closing to Defendants in the form of a convertible promissory note (the "Rork Promissory Note"), payable the earlier of (i) eighteen(18) months; or the closing of a financing event with Semir (estimated to close on or about October 15, 2019). (*See Id.* at Sec. 2.3).

37.     At all times, the payment of the Rork Purchase Price and closing of the Share Purchase Agreement was subject to and conditioned upon the closing of Defendants' Share Exchange Agreement, and Defendants' having fully, and

irrevocably paid, satisfied and retired in all respects all indebtedness or encumbrances, and obtained all final payoff letters, releases, lien discharges and other evidences thereof all in form and substance in relation to the Company Shares reasonably satisfactory to Rork. (*See Id.* at Sec. 2.3-2.5).

38.     Under the Share Purchase Agreement, Defendants were obligated to use its best efforts to take all actions necessary, proper, or advisable in order to perform the Transactions (including satisfaction, but not waiver, of the closing conditions set forth in the agreement). (*See Id.* at Sec. 5.1).

39.     Under the Share Purchase Agreement, Defendants were further obligated to promptly and practicable after the date of the Share Purchase Agreement, make all filings that were required by applicable law to be made by Defendants in order to consummate the Share Purchase Agreement, and further agreed to cooperate with Plaintiffs and their respective representatives with respect to any filings that such other parties were required to make in connection with the agreement. (*See Id.* at Sec. 5.2).

40.     Rork's obligation to consummate the Share Purchase agreement were subject to those closing conditions set forth in Section 6.1 of the Share Purchase Agreement, providing that:

> (a)   (i) all of the representations and warranties of the WL Sellers in this Agreement must be true and correct in all material respects as of

the date hereof and must be true and correct in all material respects as if made on the Closing Date; (ii) each Seller must have performed and complied with all of their respective covenants and agreements in this Agreement to be performed by them prior to or at the Closing; and (iii) each Seller must deliver to Buyer at the Closing a certificate, in form and substance reasonably satisfactory to Buyer, confirming the satisfaction of the conditions in clauses (i) and (ii) above;

(b)   each of the following documents must have been delivered to Buyer and dated as of the Closing Date (unless otherwise indicated):

   (i)   certificates representing all of the outstanding Company Shares, accompanied by duly executed and undated stock powers, in form and substance satisfactory to Buyer, for transferring the Company Shares to Buyer, free and clear of any Encumbrances;

   (ii)   written evidence, satisfactory to Buyer, that the Company has made all filings required by Law to be made by the WL Sellers in order to perform the Transactions contemplated to be performed on or before the Closing Date; and

(c)   there must not be any Proceeding pending or threatened against Buyer or any of its Affiliates that (i) challenges or seeks damages or other relief in connection with any of the Transactions; or (ii) may have the effect of preventing, delaying, making illegal or interfering with any of the Transactions.

(*See Id.* at Sec. 6.1)

41.   Defendants further agreed to indemnify Plaintiffs, and pay and reimburse Plaintiffs for "all Losses, directly or indirectly, resulting from, arising out of, relating to, in the nature of, in connection with or caused by:

(a)   any breach or inaccuracy of any representation, certificate, or warranty made by the [Defendants] in this Agreement or in any Transaction Document;

18

(b)     any breach of any covenant or agreement of the [Defendants] in this Agreement or any Transaction Document;

(c)     any claim by any Person claiming through or on behalf of any non-defaulting Party arising out of or relating to any act or omission by the [Defendants] or any other Person in reliance upon instructions from or notices given by the [Defendants]."

(*See Id.* at Sec. 9.1)

### d. Defendants' First Addendum Agreement.

42.     Following the execution of the Defendants' Share Purchase Agreement and Assumption and Assignment Agreement, and for those reasons identified in Paragraphs 48-64, below, Plaintiffs and Defendants entered into the first Addendum Agreement (the "First Addendum Agreement") on or about November 21, 2019.  A true and accurate copy of the First Addendum Agreement is attached hereto as **Exhibit C**.

43.     As part of the First Addendum Agreement, Defendants acknowledged and agreed: (i) "that the principal sum identified in the Kanopy Holdings Promissory Note to the Assignment Agreement shall be reduced by $500,000.00 USD, for a total sum now due under the Kanopy Holdings Promissory Note and the Assignment Agreement shall be $1,500,000.00 USD.  For the avoidance of doubt, such sum of $1,500,000.00 USD is payable by Kanopy Holdings to WL Group within two (2) business days after the closing (and the receipt of investment funds into Kanopy

Holdings' bank account) of the Semir Financing Event as defined in the Kanopy Holdings Promissory Note;" (*See Id* at Sec. 1) (ii) WL Group acknowledges and agrees that in the event Kanopy Holdings shall fail to achieve the Milestones, and Rork is required to repurchase some or all of Semir's shares, Rork shall have the right to offset any repurchase amount allotted to Rork up to the outstanding amount owed under the Rork Promissory Note, of which the Parties agree the maturity date of the Rork Promissory Note shall be extended to May 30, 2022;" and (iii) WL Group and Kanopy Holdings agree to enter a letter agreement for the repayment of merchandise manufactured by WL Group, the terms of which are contained in Schedule 1 of this Addendum." (*See Id* at Sec. 2-3).

44.     Schedule 1 of the First Addendum Agreement, provided as follows:

". . . For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     As of November 20, 2019, the total amount of merchandise produced by WL Group for Kanopy Group is $1,783,493 USD, as provided in Appendix A (the "Due To Merchandise Amount").

2.     WL Group agrees to adjust payment of the Due to Merchandise Amount as follows:

a.     A reduction of 25% of the merchandise value of all merchandise, with the exception to that amount related to the brand "Ottley & Me," which shall be reduced as provided in Section 2(b), the total amount owed following said 25% reduction shall be $1,161,647 USD.

b.      WL Group agrees to write off in full that amount owed by Kanopy Group related to the "Ottley & Me" brand, in the amount of $234,630 USD.  In the event Kanopy Group sells any "Ottley & Me" branded merchandise produced by WL Group, (part of the Due To Merchandise Amount), such amount received shall be paid to WL Group at 40% of the sale proceeds.  Kanopy Group shall provide an inventory list of all outstanding "Ottley & Me" branded merchandise to WL Group quarterly.

3.      Kanopy Holdings shall pay those adjusted amounts owed under Section 2a to WL Group as follows:

a.      Kanopy Holdings agrees to pay WL Group by wire or check an amount of at least $7,500 payable each month (before the last day of the month) for and until fully paid, beginning January 30, 2020; and

b.      Kanopy Holdings shall have the right to prepay in full any outstanding amount at any time.

c.      In the event Kanopy Holdings fails to make a monthly payment within 30 days of the monthly due date (the "Late Payment"), a late fee penalty of 3% of the monthly payment amount due (the "Late Payment Penalty") is payable by Kanopy Holdings, provided, the parties have not agreed to extend any monthly payment date in writing.   For avoidance of doubt, only the Late Payment, and not the total adjusted Due To Merchandise Amount shall be assessed any Late Payment Penalty.

d.      In any event, all outstanding adjusted amounts owed under Section 2a to WL Group and all Late Payment Penalties (if any) shall be fully settled by Kanopy Holdings on or before 30th June 2021.

(*See Id* at Schedule 1).

### e. Defendants' Second Addendum Agreement.

45.    As a result of Defendants' continued, willful, and bad faith actions, further delaying the closing of the parties agreements, and the Semir Transaction, Plaintiffs again sought to amicably resolve the matter with Defendants.  On that basis, on or about March 25, 2020, the Plaintiffs and Defendants entered into the Second Addendum Agreement (the "Second Addendum Agreement").  A true and accurate copy is attached hereto as **Exhibit D**.

46.    As provided in the Second Addendum Agreement, the parties agreed in relevant part to the following modifications to their respective transaction documents:

I. **Assumption and Assignment Agreement and Promissory Note.**  The Assumption and Assignment Agreement and Promissory Note (as defined below) is hereby cancelled and terminated, as follows:

a. WL Sellers acknowledges and agrees that the sum of US$1,500,000.00 being the principal sum identified in the Assignment and Assumption Agreement and the Promissory Note between Kanopy Baby and WL Sellers  (the "Assignment and Assumption Agreement and Promissory Note") and as varied in the First Addendum Agreement shall be cancelled and terminated, and the terms of this Second Addendum Agreement shall have full force and effect, and control those terms in the Share Purchase Agreement and Promissory Note.  WL Sellers acknowledges and agrees that it hereby waives any rights in and to the said sum of US$1,500,000.

b.  In connection with the above Section I(a), the Parties agree to the terms and conditions set forth in Schedule 1 "Cancellation of the Assumption and Assignment Agreement and Promissory Note.

II.  **Share Purchase Agreement and Rork Promissory Note.**  The Share Purchase Agreement and Rork Promissory Note is hereby amended, as follows:

a.  *Principal Sum.*  WL Sellers acknowledges and agrees that the principal sum of the Rork Promissory Note shall be further reduced from $900,000 USD to $500,000 USD.

b.  *Payment Terms.*  Upon execution of this Second Addendum Agreement, Rork agrees to pay WL Sellers $250,000 USD (less those deductions in Section II(c)(vi)) of the total sum of the Rork Promissory Note forthwith, with the remaining $250,000 USD (less those deductions in Section II(c)(vi)) being held by Rork unless and until WL Sellers satisfies the obligations of the Share Exchange Agreement, Rork Stock Purchase Agreement, Assignment Agreement, and the outstanding matters as outlined in Schedule 2.

c.  *WL Sellers Continued Obligations.*  WL Sellers shall cooperate with and take all commercially reasonable steps at its own expense to assist in good faith Kanopy Holdings, Kanopy International, and Rork in connection with:

i.  The preparation and filing of all financial statements of Kanopy Baby, Kanopy International and Kanopy Holdings, and any governmental or regulatory filings, including but not limited to the filing and stamping of the Parties share exchange agreement with the IRD, and the cancellation and removal from the company registry that that certain facility letter of Hang Seng Bank dated January 15, 2019;

    ii.  Transfer of all intellectual property of Kanopy International Ltd., Kanopy Baby, Inc. related to all filings of the Kanopy brands, and "Pocotex" marks;

   iii.  Transfer of all Kanopy International and Kanopy Baby company records and other relevant materials;

   iv.  Transfer of Kanopy International bank accounts, provided that for a period of four (4) months (the "Transition Period"), WL Sellers shall have joint access to the Kanopy International bank accounts. WL Sellers acknowledge and agree that any payments made by WL Sellers from the accounts shall be approved by Kanopy Holdings in advance.

    v.  The receipt of all other consents, filings, or materials necessary to effectuate the Second Amended Agreement; and

   vi.  Contribution of those certain expenses identified in Section 10.11 of the Share Purchase Agreement, which the Parties agree that Section shall be amended to $40,000 USD, which shall be deducted and paid from the cash payment in Section (a)(i) as follows: (i) ½ from the first payment; and the remaining ½ from the second cash payment.

d. *Effect of Termination*. The Parties acknowledge and agree to amend Section 7.2 "Effect of Termination" of the Shareholder Purchase Agreement to include any breach of the obligations set forth in this Second Addendum Agreement. Further, the Parties acknowledge and agree that in the event WL Sellers breaches this Second Addendum Agreement, of which has not been cured within ten (10) days of notice by the non-breaching party, WL Sellers shall forfeit any and all remaining payments owed to it under this Second Addendum Agreement. Kanopy Holdings and/or Rork shall have the right to recoup any and all payments made to WL Sellers under this Second Addendum Agreement,

including any and all fees and expenses related to the enforcement of the terms contained herein.  Any recoupment of monies paid to WL Sellers under this Second Addendum Agreement shall not terminate the transfer, assignment, and exchange of shares by WL Sellers to Kanopy Holdings and Rork.

III. **WL Sellers and Kanopy Holdings Letter Agreement.**  The Letter Agreement to the First Addendum Agreement is hereby amended, as follows:

a. The Parties agree to modify the Letter Agreement attached to the First Addendum Agreement as "Schedule 1 and 2" related to the repayment of merchandise manufactured by WL Sellers, the terms of which are contained in Schedule 2 of this Addendum.

b. WL Sellers hereby acknowledge and agree to irrevocably waives and agrees not to assert any claim it may now or hereafter have arising out of or relating to any right of payment, repayment, or recoupment of any investment, advance (including but not limited to the "Due to Merchandise"), cash payment or any other proceeds or interest thereof.

(*See Id.*).

47.    In addition to the above, Defendants acknowledged and agreed that pursuant to the amended "Due to Merchandise Amount," Kanopy Holdings was entitled to a distribution of $458,255.19.  (*See Id.* Exh. A).

**III. Defendants Willful Breach, Material Misrepresentations, and Fraud.**

48.    Despite their acknowledgement and agreement of those conditions and obligations set forth in each of the above agreements, Defendants engaged in a pattern of deliberate delays, willful refusal to perform its obligations, conversion of

funds, falsification of invoices, and further acts detrimental to Plaintiffs and the transaction with Semir.

49.   As a result of Defendants' continued delays, Rork was forced to personally loan to Kanopy Holdings over $1,500,000 in order to provide operating capital pending the closing of the Semir transaction.

50.   Defendants have actively solicited Amazon in order to usurp Plaintiffs existing business with Amazon, with Plaintiffs only discovering such act following discussions with its account representative to Amazon.

51.   Defendants have falsified invoices for services and fees it claimed were owed to it by Plaintiffs, including but not limited to invoicing Kanopy International for travel and other expenses incurred well prior to the formation of Kanopy International.

52.   Defendants willfully and knowingly withheld material information regarding the unissued shares of SSG and Rork during the negotiations and execution of the Share Purchase Agreement and Share Exchange Agreement.

53.   Upon information and belief, Defendants willfully and knowingly instructed Kanopy International's company secretary to not file the requisite share transfer documents and annual reports and payment of taxes with the Hong Kong regulatory authority, with the full understanding that such filings were required to

consummate the Share Exchange Agreement, Share Purchase Agreement, and Semir Transaction.

54.     In fact, Defendants delayed such filing for over seven months, falsely advising Plaintiffs that such were in process, were filed, or not their responsibility.

55.     Upon information and belief, Defendants willfully and intentionally misrepresented that it was transferring the Kanopy International bank accounts to Kanopy Holdings and delayed and/or refused to provide bank account records and access to Plaintiffs.

56.     Defendants have refused to transfer the Kanopy International bank accounts to Kanopy Holdings.

57.     Upon information and belief, Defendants willfully and intentionally converted funds to itself from the Kanopy International bank accounts, without consent by Plaintiffs, as required under the Second Addendum Agreement.

58.     In fact, upon continued request for access and verification of payments, invoices, and other financial records, Defendants provided Plaintiffs falsified invoices related to monies withdrawn and/or transferred to itself.

59.     Upon information and belief, Defendants have failed to transfer all company files and other records in its possession to Plaintiffs, in accordance with the Share Exchange Agreement and Share Purchase Agreement.

60.     Over the course of 2019 to present, Plaintiffs have repeatedly notified Defendants of its serious concerns related to Defendants intentional and material breaches of its obligations under the above agreements, and Defendants' intentional interference with Kanopy Holdings (including Kanopy Baby, Inc., and Kanopy International Ltd.) business relationships, commercial agreements, financial and securities activities.

61.     Despite its repeated good faith efforts to resolve this matter with Defendants, Defendants have and continue to ignore their obligations and representations, and without contractual or legal justification.

62.     In fact, on or about March 5, 2020, Plaintiffs provided notice to Defendants related to an emergency meeting to discuss Defendants breaches. Defendants refused to acknowledge the notice or attend the meeting.

63.     More so, based upon information and belief,  Defendants unlawfully and willfully converted at least USD $1,400,000 of Kanopy International cash assets owed to Kanopy Holdings.

64.     As a direct result of Defendants' actions, and failure to satisfy its obligations under the above agreements, Semir terminated its $4,000,000 investment in Kanopy Holdings.

65.     In addition, as a direct result of Defendants' actions, the value of

Kanopy Holdings decreased by approximately $26,000,000, leaving it at a liquidation value of $2,000,000.

## COUNT I
### (On Behalf of Kanopy Holdings)
### Breach of Contract

66.    Plaintiff, Kanopy Holdings, repeats and realleges each of the foregoing allegations in Paragraphs 1-65 as though fully set forth herein.

67.    Kanopy Holdings and Defendants, for valuable consideration, entered into a valid and enforceable contract (with subsequent addendums) on the terms and conditions set forth in Paragraphs 17-47, above.

68.    Pursuant to the Share Exchange Agreement, as amended, Defendants agreed to the terms and conditions set forth in Paragraphs 17-47, above, as acknowledged by Defendants initials on each page and signature of each signature page.

69.    Pursuant to the Share Exchange Agreement (as amended), Defendants willfully, voluntarily, and knowingly made those representations and warranties as provided in in Paragraphs 30-33.

70.    In breach of the express terms of the Share Exchange Agreement, as amended, Defendants have jointly, willfully, and intentionally (i) delayed, failed and/or refused to transfer all Kanopy International company materials, bank

accounts, bank records, accounting and financial records; (ii) delayed, failed and/or refused to transfer those monies owed to Kanopy Holdings; and (iii) materially, intentionally, and willfully made material misrepresentations, falsified invoices, delayed and/or failed to file necessary and appropriate filings with the Hong Kong regulatory authority.

71.    Defendants have and continue to refuse repeated demands by Kanopy Holdings to comply with their obligations, and in continuing breach of the Share Exchange Agreement, as amended, Defendants have continued to draw funds from the Kanopy International bank account in excess of $1,400,000 without permission of Kanopy Holdings.

72.    As a direct and proximate result of Defendants' failure to perform their contractual obligations, Plaintiffs failed to receive the benefits and/or performance to which they were entitled.

73.    As a direct and proximate result of Defendants' actions, the investment by Semir was terminated, resulting in a $4,000,000 loss in investment to Kanopy Holdings, and approximately $26,000,000 in loss in value.

74.    As a result, Plaintiffs are entitled to specific performance and/or fair compensation in the form of all losses, expenses, reimbursements, charges, and those other damages under the Kanopy Holdings Agreements.

75.     **WHEREFORE**, Kanopy Holdings requests that this Court enter judgment against Defendants, and award Kanopy Holdings for damages including losses, expenses, plus interest, costs, and such other relief as this Court deems just and proper.

### COUNT II
### (By Rork)
### <u>Breach of Contract</u>

76.     Plaintiff, Rork, repeats and realleges each of the foregoing allegations in Paragraphs 1-75 as though fully set forth herein.

77.     Rork and Defendants, for valuable consideration, entered into a valid and enforceable Share Purchase Agreement, as amended, on the terms and conditions as set forth in Paragraphs 17-47, above.

78.     Pursuant to the Share Purchase Agreement, as amended, Defendants agreed to the terms and conditions set forth in Paragraphs 17-47, above, as acknowledged by Defendants initials on each page and signature of each signature page.

79.     Pursuant to the Share Purchase Agreement, as amended, Defendants willfully, voluntarily, and knowingly made those representations and warranties as provided in in Paragraphs 34-41.

80.    In breach of the express terms of the Rork Agreements, Defendants have jointly, willfully, and intentionally (i) failed and/or refused to fully, and irrevocably paid, satisfied and retired in all respects all indebtedness or encumbrances, and obtained all final payoff letters, releases, lien discharges and other evidences thereof all in form and substance in relation to the Company Shares reasonably satisfactory to Rork; (ii) failed and/or refused to use its best efforts and take all actions necessary, proper or advisable in order to perform consummate the Share Purchase Agreement including, but not limited to the satisfaction the closing conditions set forth in the agreement; (iii) made material misrepresentations of fact regarding Rork's shares in Kanopy International, payments of expenses, and required regulatory filings.

81.    Defendants have and continue to refuse repeated demands by Rork to perform their obligations under the Stock Purchase Agreement, as amended.

82.    Defendant's breach of contract has damaged Rork in an amount exceeding $1,500,000.

83.    In accordance with the terms of the Stock Purchase Agreement, as amended, Defendants have acknowledged and agreed that under such breach, Rork is entitled to any and all fees and expenses related to the enforcement of the terms of the Share Purchase Agreement, as amended, including but not limited to the

recoupment of monies paid by Rork to Defendants under Stock Purchase Agreement, as amended.

84.     **WHEREFORE**, Rork requests that this Court enter judgment against Defendants, and award Rork damages in the amount of exceeding $1,500,000, plus interest, costs, and such other relief as this Court deems just and proper.

**COUNT III**
**(All Plaintiffs)**
**Conversion**

85.     Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-84 as though fully set forth herein.

86.     The Parties' contracts provide that Defendants shall transfer all rights in and to the Kanopy International bank accounts, accounts receivable, and all monies therein.

87.     Defendants have willfully and without lawful justification appropriated Plaintiff's property without consent of the Plaintiffs.

88.     Defendants have acknowledged the willful withholding of monies owed to Kanopy Holdings.

89.     Defendants' unlawful appropriation has damaged Plaintiffs in an amount exceeding $1,400,000.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants in the amount exceeding $1,400,000, plus interest, costs, and such other relief as this Court deems just and proper.

**COUNT IV**
**(All Plaintiffs)**
**<u>Fraud</u>**

90.     Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-89 as though fully set forth herein.

91.     As part of the Share Exchange Agreement and Share Purchase Agreement, as amended, voluntarily and knowingly made false misrepresentations of fact related to the Rork and SSG shares in Kanopy International, filing and transfer of shares pursuant to registrations with the Hong Kong regulatory authority, and falsification of invoices to disguise its conversion of no less than $1,400,000 of monies owed to Kanopy Holdings.

92.     Defendants knowingly engaged in a pattern of practice of fraud in order to confer benefits on itself.

93.     Defendants were unjustly enriched by their false misrepresentations and fraud.

94.     By reason of Defendants' unjust enrichment, Plaintiffs have each been injured in an amount not less than $26,000,000.

**WHEREFORE**, Plaintiffs requests that this Court enter judgment against Defendants for damages in the principal amount of no less than $26,000,000, plus interest, costs, and such other relief as this Court deems just and proper.

### COUNT V
### (All Plaintiffs)
### Fraud In the Offer Or Sale of Securities

95.    Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-94 as though fully set forth herein.

96.    Defendants, each, by engaging in the conduct describe above, directly, or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of mail:

   a.  With scienter, employed devices, schemes, or artifices to defraud;

   b.  Obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c.  Engaged in transactions, practices, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

97.    By engagement in the conduct described above, each of the Defendants violated, and unless restrained and enjoined will continue to violate, Section

10(b) of the Exchange Act, 15 U.S.C. Sec 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. Sec. 240.10b-5.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants for damages, and disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest, and further take such action in the principals of equity to enjoin Defendants' further actions, or to entertain any suitable application or motion for additional relief within this Court.

## COUNT VI
### Breach of Fiduciary Duty
### (All Plaintiffs)

98.     Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-97 as though fully set forth herein.

99.     Between 2017 and 2020, Defendants served as directors to Kanopy Baby and Kanopy Holdings.

100.     Defendants owed Plaintiffs a fiduciary duty of full disclosure; duty of good faith and fidelity; duty of loyalty; duty to act fairly; duty to account; and duty of care.

101.     Plaintiffs had no knowledge of Defendants intentional acceptance of SSG investment without issuing shares in exchange for the purchase, failure to issue

Rork's shares, conversion of accounts receivables, and falsification of invoices prior to the execution of the parties' respective agreements.

102.   Defendants breached their fiduciary duties to Plaintiffs by failing to act in the best interest of Kanopy International and Kanopy Baby by:

   a.   Engaging in acts and acquiring other interests adverse to Kanopy International and Kanopy Baby;

   b.   Diverting business of Kanopy Holdings to itself;

   c.   Using and converting Kanopy International's bank accounts for Defendants' own purposes;

   d.   Misrepresenting and omitting key facts and events in their communication with Plaintiffs and Semir; and

   e.   Diversion of prospective economic advantage.

103.   Through their actions, Defendants actively undermined the interests of Plaintiffs.

104.   As a direct and proximate result of Defendants' willful breach of its fiduciary duty, Plaintiffs have suffered and will continue to suffer damages from lost profits, exposure to securities liabilities, lost revenue, lost investment, compensatory damages, and other further damages, all in an amount to be proved at trial.

105.     Plaintiffs are entitled to recover all monies, expenses, and consideration paid to Defendants during the time of their breach of fiduciary duties owed to Kanopy Baby and Kanopy International.

106.     Further, as a result of Defendants' knowing, willful, intentional, and malicious conduct, Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants in the amount to be proven at trial, including compensatory damages, punitive damages, expenses, interest, costs, and such other relief as this Court deems just and proper.

## COUNT VII
### Tortious Interference with Business Relationships
### (All Plaintiffs)

107.     Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-106 as though fully set forth herein.

108.     As a director, operator, vendor, and shareholder of Kanopy Baby and Kanopy International, Defendants were fully aware of Plaintiffs' accounts and business relationships.

109.     During Defendants' services to Kanopy Baby and Kanopy International, Defendants solicited business from Plaintiffs' customer, Amazon, while intentionally concealing these actions from Plaintiffs.

110.    During the negotiations of an investment by Semir into Kanopy Holdings, Defendants intentionally and willfully delayed the transfer of due diligence materials requested, delayed and/or refused to file the requisite share transfer and director change with the Hong Kong regulatory authority; delayed the transfer of material intellectual property; delayed and/or refused to provide audit reports, financial records, bank records, or corporate records critical to the completion of the Semir investment.

111.    Additionally, Defendants exploited their position as a vendor to Plaintiffs willfully and intentionally withholding shipments and/or delaying the shipment of Plaintiffs' products to customers, as well as seeking unverified fees for claimed services.

112.    As a direct and proximate result of Defendants' actions, Semir terminated its $4,000,000 investment into Kanopy Holdings, further resulting in a decrease in Kanopy Holdings' value by no less than $26,000,000.

113.    Upon information and belief, Defendants misappropriated Plaintiffs' customer accounts with the express intention that they would use it to interfere with Plaintiffs' relationship with its customers, including but not limited to Amazon, and to unlawfully solicit Plaintiffs' customers.

114.     When Defendants committed the above acts, it thereby caused injury to Plaintiffs and tortiously interfered with Plaintiffs' business relationships with its customers, potential customers, and investors.

115.     As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered and will continue to suffer irreparable harm, as well as damages in an amount to be proven at trial.

116.     Without the issuance of a temporary restraining order and preliminary injunction by the Court against Defendants, there is likelihood of continued irreparable harm to Plaintiffs due to interference with further business matters and relationships.

117.     The issuance of a temporary restraining order and preliminary injunction will prevent further irreparable harm to Plaintiffs and will not cause an undue inconvenience or loss to Defendants or the public.

118.     As a result of the Defendants' misconduct, Plaintiffs are entitled to damages in an amount not yet fully ascertainable, but to be proven at trial.

**COUNT VIII**
**Indemnity**
**(All Plaintiffs)**

119.     Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-118 as though fully set forth herein.

120.     As provided in Paragraphs 29, 41, and 46, above, Defendants agreed to indemnify Plaintiffs for "any and all claims, losses, penalties, fines, forfeitures, costs, including reasonable and necessary legal fees (irrespective of whether or not incurred in connection with the defense of any actual or threatened action, proceeding, or claim), judgments, and any other costs, fees and expenses (collectively, "Losses") that the [Plaintiffs] suffers or may sustain in any way related to or in connection with any: (i) fraud, negligence or willful misconduct by [Defendants] in relation to the transactions set out in Article II of this Agreement, or (ii) a breach of in relation to the representations or warranties or other obligations of WL Sellers contained in this Agreement or any Exchange Documents."  (*See* Exh. A at Sec. 5.6, *see also* Exh. B at Sec. 9.1).

121.     This litigation is an action arising out of the Share Exchange Agreement and Share Purchase Agreement, as amended.

122.     Defendant is therefore obligated to indemnify Plaintiffs for all claims, losses, penalties, fines, cost, including legal fees, and any other costs, fees, and expenses resulting from the agreements and this litigation.

123.     Plaintiffs are entitled to all claims, losses, penalties, fines, cost, including legal fees, and any other costs, fees, and expenses resulting from the agreements and this litigation.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants in the amount to be proven at trial, including compensatory damages, punitive damages, expenses, interest, costs, and such other relief as this Court deems just and proper.

## COUNT IX
### Attorney's Fees
### (All Plaintiffs)

124.    Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-123 as though fully set forth herein.

125.    Defendants have acted in bad faith and have caused Plaintiffs unnecessary trouble and expense with respect to the underlying actions described above.

126.    Therefore, pursuant to O.C.G.A. §13-6-11, Plaintiffs are entitled to recover attorney's fees and costs it has incur and will incur in this action.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants for attorney's fees, expenses, interest, costs, and such other relief as this Court deems just and proper.

## COUNT X
## Punitive Damages
## (All Plaintiffs)

127.    Plaintiffs repeat and reallege each of the foregoing allegations in Paragraphs 1-126 as though fully set forth herein.

128.    Defendants' actions showed willful misconduct, malice, fraud, wantonness oppression, or that entire want of car which would raise the presumption of conscious indifference to consequences.

129.    Accordingly, Defendants are liable to Plaintiffs for punitive damages.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants for punitive damages, expenses, interest, costs, and such other relief as this Court deems just and proper.

### Prayer for Relief

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

    a.  Enter judgment in favor of Plaintiffs against Defendants on all counts in this Complaint;

    b.  Enter an order immediately and permanently enjoining Defendants, its officers, directors, agents, employees, company secretaries, attorneys, and any entity or person in active concert or participation with it, from

further tortious interference with Plaintiffs' business, use of Plaintiffs' bank accounts, and business relationships;

c.  Enter an order requiring Defendants' to transfer all company files, documents, materials, accounts, financial records, or other materials related to Kanopy Baby, Kanopy International, and Kanopy Holdings;

d.  Award Plaintiffs actual and compensatory damages in the amount requested in in Count;

e.  Award Plaintiffs attorney's fees, costs, and expenses it has and will incur in the prosecution of this Complaint;

f.  Award Plaintiffs punitive and exemplary damages in the amount to be determined at trial;

g.  Award Plaintiffs pre- and post- judgment interest as allowed by law; and

h.  Grant such other and further relief as this Court deems just and proper.

Dated: August 12, 2021

Respectfully submitted,

 Rodriguez LLC


 /s/ C. Denning Rodriguez
C. Denning Rodriguez, Esq.
Ga. Bar No. 611505
3343 Peachtree Road NE Ste 145-437
Atlanta, Georgia 30326
Telephone: 212.227.4183

*Counsel for Plaintiffs Kanopy
Holdings, Inc., and Christopher Rork*