# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

KANOPY HOLDINGS, INC. and
CHRISTOPHER RORK,

             Plaintiffs,

     v.

WL GROUP LTD, PO CHIU YUEN (aka
Larry Yuen), and WING LUEN
KNITTING FACTORY LTD.,

            Defendants.

Case No.  1:21-CV-03304-SDG

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Mary M. Weeks, GA Bar No. 559181
Bianca N. DiBella, GA Bar No. 820341
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, Suite 3000
Atlanta, GA 30308
Tel:   (404) 885-3000
Fax:  (404) 885-3900
mary.weeks@troutman.com
bianca.dibella@troutman.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................1

FACTUAL BACKGROUND ..............................................................3

ARGUMENT AND CITATION OF AUTHORITY ..............................7

I.     STANDARD OF REVIEW ........................................................7

II.    GOVERNING LAW ...................................................................8

III.   PLAINTIFFS' TORT CLAIMS MUST BE DISMISSED FOR
       *FORUM NON CONVENIENS* ...............................................11

IV.    THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A
       CLAIM UNDER RULE 12(B)(6) ............................................13

       A.     Plaintiffs Fail To Allege Any Defendants' Purported
              Misconduct With The Required Specificity ......................13

       B.     The FAC Does Not Satisfy Rule 9(b) Or The PSLRA. .....14

              1.     Plaintiffs' Securities Fraud Claim Is Inadequately Pled..........14

              2.     Plaintiffs Fail to State A Claim for Common Law Fraud........17

              3.     Plaintiffs' Breach of Fiduciary Duty Claim Fails....................19

       C.     Plaintiffs' Contract-Related Claims Fail As a Matter of Law. ..........21

              1.     The Agreements Themselves Bar Plaintiffs' Claims...............21

              2.     Plaintiffs Have Ratified Any Alleged Breaches Of The
                     Agreements And Forfeited Their Claims................................23

              3.     W L Knitting's Status As A Non-Party To The
                     Agreements Bars Plaintiffs' Breach of Contract Claims.........24

              4.     Plaintiffs' Indemnity Claim Fails. ........................................25

       D.     Plaintiffs' Remaining Tort Claims Fail As a Matter of Law. ............26

              1.     Plaintiffs Have Not Sufficiently Pled A Conversion
                     Claim. ...................................................................................26

              2.     The FAC Does Not State A Tortious Interference Claim. ......28

**TABLE OF CONTENTS**
(continued)

**Page**

3.    Plaintiffs' Conversion And Tortious Interference Claims Also Are Barred By The Economic Loss Rule........................30

E.    Plaintiffs Cannot Recover Punitive Damages Or Attorneys' Fees...........................................................................................31

CONCLUSION .........................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADA v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ..........................................................7

*Anderson v. Wachovia Mortg. Corp.*,
  497 F. Supp. 2d 572 (D. Del. 2007)...................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................14

*Barron v. Lampley*,
  No. 4:15-CV-0038-HLM, 2015 WL 12591006
  (N.D. Ga. June 22, 2015) .................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................7

*Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*,
  906 A.2d 827 (Del. Ch. 2006) .........................................................21

*Brooks v. Branch Banking & Tr.*,
  107 F. Supp. 3d 1290 (N.D. Ga. 2015).............................................26

*Brown v. Delta Air Lines, Inc.*,
  No. 1:20-cv-4566, 2021 WL 2479091 (N.D. Ga. Mar. 9, 2021)........3

*Carter v. Porsche Cars N. Am., Inc.*,
  No. 1:19-cv-5508-MLB, 2021 WL 6805718
  (N.D. Ga. June 25, 2021) .................................................................10

*Cavalier Carpets, Inc. v. Caylor*,
  746 F.2d 749 (11th Cir. 1984) .........................................................18

*Coon v. Med. Ctr., Inc.*,
  797 S.E.2d 828 (Ga. 2017) ................................................................9

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009) ...........................................................8

*Cox v. City of Atlanta*,
  596 S.E.2d 785 (Ga. Ct. App. 2004)...................................................30

*Crawford's Auto Ctr., Inc. v. State Farm Mutual Auto. Ins. Co.*,
  945 F.3d 1150 (11th Cir. 2019) .........................................................17

*Damian v Montgomery Cty. Bankshares, Inc.*,
  981 F. Supp. 2d 1368 (2013) .............................................................18

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ...........................................................3

*Deere & Co. v. Exelon Generation Acquisitions, LLC*,
  No. N13C-07-330, 2016 WL 6879525 (Del. Super. Nov. 22, 2016) ................25

*Disaster Servs., Inc. v. ERC P'Ship*,
  492 S.E.2d 526 (Ga. Ct. App. 1997)...................................................30

*Elavon, Inc. v. Wachovia Bank, Nat'l Ass'n*,
  No. 1:09-CV-0139-ODE, 2009 WL 10699138
  (N.D. Ga. Oct. 13, 2009)....................................................................29

*Estate of Eller v. Barton*,
  31 A.3d 895 (Del. 2011) .....................................................................11

*Faircloth v. A.L. Williams & Assocs., Inc.*,
  426 S.E.2d 601 (Ga. Ct. App. 1992)...................................................28

*Farm Credit of Nw. Fla., ACA v. Easom Peanut Co.*,
  718 S.E.2d 590 (Ga. Ct. App. 2011).....................................................9

*Ford v. Brown*,
  319 F.3d 1302 (11th Cir. 2003) .....................................................11, 12

*Gale v. Bershad*,
  No. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998) ......................20

*Gen. Elec. Co. v. Lowe's Home Centers, Inc.*,
608 S.E.2d 636 (Ga. 2005) ............................................................30, 31

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ..............................................................3

*Heller v. Kiernan*,
No. 1484-K, 2002 WL 385545 (Del. Ch. Feb. 27, 2002),
*aff'd by* 806 A.2d 164 (Del. 2002)........................................................21

*HostLogic Zrt v. GH Int'l, Inc.*,
No. 6:13-cv-982, 2014 WL 2968279 (M.D. Fla. June 30, 2014).......................10

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850 (11th Cir. 2016)...........................................15

*In re Coca-Cola Enters. Inc. Sec. Litig.*,
510 F. Supp. 2d 1187 (N.D. Ga. 2007)...............................................16

*Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362 (M.D. Ga. 2005).........................29

*Int'l Bus. Machines Corp. v. Kemp*,
536 S.E.2d 303 (Ga. Ct. App. 2000)....................................................9

*Irving v. Bank of Am.*,
497 F. App'x 928 (11th Cir. 2012)...................................................31

*J. Andrew Lunsford Props., LLC v. Davis*,
572 S.E.2d 682 (Ga. Ct. App. 2002).................................................31

*Leon v. Million Air, Inc.*,
251 F.3d 1305 (11th Cir. 2001) ......................................................11

*Madison Realty Partners 7, LLC v. Ag ISA, LLC*,
No. 18094, 2001 WL 406268 (Del. Ch. Apr. 17, 2001)...................................20

*Magnin v. Teledyne Cont'l Motors*,
91 F.3d 1424 (11th Cir. 1996) .......................................................12

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) ........................................................8, 9

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ...........................................14, 15, 16

*Morris v. Nat'l W. Life Ins. Co.*,
  430 S.E.2d 813 (1993) .......................................................................27

*Murphy v. Warren*,
  No. 1:12-cv-3317-WSD, 2015 WL 363023 (N.D. Ga. 2015) .....................14, 27

*Nored & Assocs., Inc. v. ADP Inc.*,
  No. 1:20-cv-00239-WMR, 2020 WL 10576414
  (N.D. Ga. Sept. 17, 2020) ...................................................................31

*Osiris Therapeutics, Inc. v. MiMedx Grp., Inc.*,
  No. 1:19-cv-00857, 2020 WL 11192769 (N.D. Ga. Feb. 24, 2020) ...................8

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) ............................................................8

*Patel v. Patel*,
  761 F. Supp. 2d 1375 (N.D. Ga. 2011)................................................16

*Paws Holdings v. Daikin Indus.*,
  No. CV 116-058, 2017 WL 706624 (S.D. Ga. Feb. 22, 2017)...........................13

*Pelletier v. Stuart-James Co.*,
  863 F.2d 1550 (11th Cir. 1989) .........................................................16

*Pennington v. Braxley*,
  480 S.E.2d 357 (Ga. Ct. App. 1997)....................................................18

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
  117 F. Supp. 3d 613 (D. Del. 2015).....................................................22

*Pinkert v. John J. Olivieri, P.A.*,
  No. 99-380-SLR, 2001 WL 641737 (D. Del. May 24, 2001) ...........................25

*Rana Fin., LLC v. City Nat'l Bank of N.J.*,
   347 F. Supp. 3d 1147 (S.D. Fla. 2018) ...............................................................19

*Rema Tip Top/N. Am., Inc. v. Shaw-Almex Indus., Ltd.*,
   No. 1:15-CV-01838-AT, 2015 WL 11492540
   (N.D. Ga. Nov. 18, 2015) ....................................................................................28

*Rowland v. Rowland*,
   No. 1:04-CV-2068-TWT, 2005 WL 3096169
   (N.D. Ga. Nov. 18, 2005) ....................................................................................26

*Sheppard v. Int'l Bus. Machines Corp.*,
   No. 1:20-CV-0959-WMR-LTW, 2021 WL 2649455
   (N.D. Ga. May 27, 2021) .....................................................................................32

*Sibaja v. Dow Chemical Co.*,
   757 F.2d 1215 (11th Cir. 1985) ..........................................................................11

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
   112 A.3d 271 (Del. Ch. 2015) .......................................................................19, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................16

*U.S. v. Balsys*,
   524 U.S. 666 (1998)..............................................................................................9

*Wallace v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ..........................................................................24

*Weiland v. Palm Beach Cty. Sheriff's Office*,
   792 F.3d 1313 (11th Cir. 2015) ..........................................................................13

*WESI, LLC v. Compass Envtl.*,
   509 F. Supp. 2d 1353 (N.D. Ga. 2007)...............................................................27

*Worsham v. Provident Cos.*,
   249 F. Supp. 2d 1325 (N.D. Ga. 2002)...................................................17, 18, 19

**Statutes**

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4 ("PSLRA")..................................................................14, 15

15 U.S.C. § 78j ("Section 10(b)")...................................................................*passim*

O.C.G.A. § 13-6-11..............................................................................................32

O.C.G.A. § 51-12-5..............................................................................................32

**Other Authorities**

Fed. R. Civ. P. 8..................................................................................................13

Fed. R. Civ. P. 9(b) ............................................................................14, 17, 19, 20

Fed. R. Civ. P. 12(b)(5)........................................................................................1

Fed. R. Civ. P. 12(b)(6).............................................................................1, 7, 13

Defendants W L Group Limited ("W L Group"), Po Chiu Yuen (aka Larry Yuen), and Wing Luen Knitting Factory Limited ("W L Knitting"; together with WL Group and Mr. Yuen, "Defendants"), by and through their attorneys respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs Kanopy Holdings, Inc.'s ("Kanopy Holdings") and Christopher Rork's (collectively, "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) and the *forum non conveniens* doctrine.

## **INTRODUCTION**

Through this action, Plaintiffs seek to transform a series of setbacks experienced by Defendants during the divestment of their interests in a business venture between a Georgia resident and Delaware corporation, on the one hand, and two Hong Kong entities and a Hong Kong-based individual, on the other, into a fraud and other unfounded claims of misdeeds. But all these claims really amount to is a dispute regarding the parties' respective interests in Plaintiff Kanopy Holdings and non-parties Kanopy Baby, Inc. and Kanopy International.

Plaintiffs resort to shotgun pleading, targeting ***all Defendants*** with ten causes of action—for multiple breaches of contract, fraud, conversion, securities fraud, breach of fiduciary duty, tortious interference, indemnity, punitive damages,

and attorneys' fees—without any effort to distinguish supporting facts or each Defendant's respective roles for each claim. Defendant W L Knitting is further trapped in the crosshairs of this inartful pleading, as it is not a party to any agreement allegedly breached and is absent from the FAC beyond its identification as a defendant.

Plaintiffs' attempt to mask the inadequacies of their pleading fails, and the FAC should be dismissed. First, Plaintiffs' claims for conversion, fraud, and tortious interference—all governed by Hong Kong law—must be dismissed on *forum non conveniens* grounds and for failure to state a claim. Next, Plaintiffs' securities fraud claim, governed by United States federal law, is replete with boilerplate allegations that are woefully insufficient to meet the stringent pleading requirements. Likewise, Plaintiffs' breach of fiduciary duty claim—governed by Delaware law and sounding in fraud—is unavailing both by reason of its failure to satisfy heightened pleading requirements and its mere duplication of other claims. Finally, Plaintiffs' breach of contract and indemnity claims—governed by Delaware law—also fail to adequately allege a claim against each Defendant. Thus, the FAC should be dismissed in its entirety.

## FACTUAL BACKGROUND[1]

## I.    The Kanopy Entities

Defendants W L Group and W L Knitting are Hong Kong limited companies with their principal places of business in Hong Kong.  FAC ¶¶ 3, 5.  Defendant Larry Yuen is an individual who currently resides in China and is affiliated with W L Group and W L Knitting.  *Id.* ¶ 4.

Defendants W L Group and Larry Yuen and Plaintiff Rork formed what became Kanopy Baby, Inc. on or about June 29, 2017, with its principal business office in Atlanta, Georgia and with Mr. Yuen and Mr. Rork appointed to the board of directors.  *Id.* ¶¶ 10–11.  On or about May 23, 2018, W L Group and Mr. Yuen incorporated Kanopy International in Hong Kong as a seller of private label childrenswear brands to United States e-commerce retailers.  *Id.* ¶ 12.  W L Group and Mr. Yuen were appointed to the board of directors, with Mr. Yuen serving as

---

[1] The conclusory allegations of the FAC are assumed to be true solely for the purposes of this Motion.  The Court may consider those documents annexed to the Declaration of Mary M. Weeks in Support of Defendants' Motion to Dismiss ("Weeks Decl."), filed contemporaneously herewith, as well as those exhibits attached to the original Complaint, ECF No. 1, *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007), and other "undisputed" agreements that are "central to the plaintiff's claim," *Brown v. Delta Air Lines, Inc.*, No. 1:20-cv-4566, 2021 WL 2479091, at *4 (N.D. Ga. Mar. 9, 2021); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Chairman.  *Id.* ¶ 13.  W L Group and Mr. Yuen each received one share of Kanopy International stock, with no other shares issued.  *Id.* at ¶ 16.

From October 2018 through May 2019, Defendants and Mr. Rork negotiated the corporate restructuring of Kanopy International and Kanopy Baby as subsidiary entities of a newly-formed holding company, Kanopy Holdings.  *Id.* ¶ 17.  Through the restructuring, the parties exchanged their respective shares in Kanopy International and Kanopy Baby for shares of Kanopy Holdings.  *Id.* ¶ 18.  Due to a vendor requirement, Defendants needed to divest their majority interest in Kanopy Baby and Kanopy International.  *Id.* ¶ 20.  Consequently, Mr. Rork identified a potential investor, Zhejiang Semir Garment Co. Ltd. ("Semir"), to assume W L Group's and Mr. Yuen's shares.  *Id.* ¶ 21.  On May 19, 2019, W L Knitting and Mr. Yuen agreed to an overall scheme to accomplish the divesture (the "Kanopy Framework Agreement").  *Id.* ¶ 23.  Under the Kanopy Framework Agreement, W L Group, Mr. Yuen, and Mr. Rork formed Kanopy Holdings, a Delaware corporation.  *Id.* ¶ 25.  In exchange for a $900,000 payment[2] by Mr. Rork secured by a promissory note ("Rork Note") and a $2 million payment drawn from a

---

[2] The Parties agreed to a $1 million payment offset by the cancellation of a $100,000 payment that Defendants owed to Mr. Rork.  *Id.* ¶¶ 24, 35.  This offset payment was later reduced to $500,000.  *Id.* ¶ 46.

convertible note issued by Kanopy Holdings, W L Group and Mr. Yuen would sell their collective interest in Kanopy Holdings.  *Id.* ¶¶ 24–25.  Thereafter, W L Group and Mr. Yuen would retain only a 7.5% interest in Kanopy Holdings.  *Id.*  The parties also agreed that this transaction would satisfy $3,208,909 in loans and other obligations that Kanopy Baby and Kanopy International previously owed to Defendants.  *Id.*

## II.    The Share Exchange Agreement and Share Purchase Agreement

Following execution of the Kanopy Framework Agreement, on or about October 9, 2019, Kanopy Holdings entered into a Share Exchange Agreement with W L Group and Mr. Yuen, whereby W L Group and Mr. Yuen agreed to exchange all of their respective shares in Kanopy Baby and Kanopy International—1,600 shares and two shares respectively—for shares in Kanopy Holdings (the "SEA"). *Id.* ¶ 26; Compl. Ex. A.  W L Knitting is ***not*** a party or signatory to the SEA.  *Id.*

On or about October 9, 2019, Kanopy Holdings entered into a Share Purchase Agreement with W L Group, Mr. Yuen, and Mr. Rork (the "SPA"; together with the SEA, "Agreements").  FAC ¶ 34.  W L Knitting is ***not*** a party or signatory to the SPA.  *Id.*; Compl. Ex. B.   Once W L Group and Mr. Yuen transferred their shares to Kanopy Holdings pursuant to the SEA, under the SPA, they would  transfer  6,300  shares  of  Kanopy  Holdings  stock  to  Mr. Rork  in

exchange for the Rork Note.  FAC ¶¶ 24, 35.  The parties agreed that this consideration would be paid at closing in the form of a convertible promissory note payable the earlier of 18 months later or at the closing of a contemplated financing event with Semir.  *Id.* ¶ 36.

### III.    First and Second Addendum Agreements

On or about November 22, 2019, Kanopy Holdings, W L Group, and Mr. Rork executed the first addendum to the various agreements already in place ("First Addendum Agreement").  *Id.* ¶ 42.  W L Knitting is ***not*** a party or signatory to the First Addendum Agreement.  *Id.*; Compl. Ex. C.  As part of the First Addendum Agreement, the parties agreed to lower Kanopy Holdings' share purchase price from $2 million to $1.5 million and delay closing.  FAC ¶ 43.  The parties agreed that the payment by Kanopy Holdings would be made within 2 business days after the contemplated Semir closing.  *Id.*  Semir's investment was contingent upon Kanopy Holdings achieving cumulative sales and EBITDA targets for FY2021.  *See* Compl. Ex. C at Schedule 1.  If Kanopy Holdings failed to achieve these milestones, precluding Semir's investment, Mr. Rork agreed to repurchase some or all of Semir's shares and to offset any repurchase amount up to the outstanding amount under the Rork Note.  *Id.* ¶ 43.  At some point thereafter, Semir elected to terminate its investment.  *Id.* ¶ 45.

On March 25, 2020, Kanopy Holdings, Kanopy International, W L Group, Mr. Yuen, and Mr. Rork executed the second addendum to the various agreements ("Second Addendum Agreement"). *Id.* ¶ 45. Yet again, W L Knitting was ***not*** a party to the Second Addendum Agreement. *Id.*; Compl. Ex. D. This agreement canceled the $1.5 million payment under the First Addendum Agreement and lowered the purchase price payable by the Rork Note to $500,000. FAC ¶ 46. It also required W L Group and Mr. Yuen to transfer intellectual property and other property to Kanopy Holdings and to assist in filing required financial statements in Hong Kong to effectuate the transfer. *Id.* It no longer contemplated the Semir investment and, in fact, adjusted the parties' obligations to account for the absence of this event. *Id.* ¶¶ 45–46.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[c]onclusory allegations, unwarranted deductions of facts or legal

conclusions masquerading as facts will not prevent dismissal," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## II.    <u>Governing Law</u>

Most of Plaintiffs' tort claims—conversion (Count III), fraud (Count IV), and tortious interference (Count VII) (the "Tort Claims")—are governed by the law of the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") because they are ***not*** governed by the terms of the parties' Agreements, each of which only provide that it "shall be construed and enforced in accordance with the laws of the State of Delaware." *See* Compl. Ex. A § 7.12 & Compl. Ex. B § 10.8.  These provisions are not so broad as to encompass the Tort Claims because they "only purport[] to govern the agreement itself." *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009); *Osiris Therapeutics, Inc. v. MiMedx Grp., Inc.*, No. 1:19-cv-00857, 2020 WL 11192769, at *3 (N.D. Ga. Feb. 24, 2020) (declining to "apply the Agreement's choice-of-law provision to Plaintiff's tort claims" where it "only covers the Agreement").

Georgia's conflict of laws rule applies here.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (a district court will apply the choice of law rule of the state where it sits).  Georgia follows the doctrine of *lex loci delicti* in tort cases, which provides that "tort cases are governed by the substantive

law of the state where the tort was committed." *Id.* at 1140 (quotation omitted). Specifically, "the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort." *Int'l Bus. Machines Corp. v. Kemp*, 536 S.E.2d 303, 306 (Ga. Ct. App. 2000).[3]

Here, the alleged conduct underlying the Tort Claims occurred entirely in Hong Kong. *See infra* Section III. The alleged acts of conversion took place in Hong Kong because Defendants at all relevant times have been present in Hong Kong. FAC ¶¶ 3–5; *see, e.g.*, *Farm Credit of Nw. Fla., ACA v. Easom Peanut Co.*, 718 S.E.2d 590, 600 (Ga. Ct. App. 2011) (finding conversion takes place where "converter handled the property and under *lex loci delicti*, that place's law controls"). And, because Plaintiffs premise their theory of damages for fraud on a theory of unjust enrichment, *see* FAC ¶ 93, the ordinary rule—that for tortious interference and fraud claims the "last act" is the harm suffered—does not apply here. *Int's Bus. Machines Corp.*, 536 S.E.2d at 306. Instead, the "final act" of the

---

[3] Georgia recognizes an exception to the *lex loci delicti* rule and applies the common law of Georgia where another state's common law—rather than a statute—is at issue as "there is one common law." *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017). That exception does not apply here because, unlike the common law of another U.S. state, the common law of Hong Kong is a different common law than Georgia's or any other U.S. jurisdiction. *See U.S. v. Balsys*, 524 U.S. 666, 687 (1998) (finding that English common law decisions post-independence—the basis for Hong Kong's common law—are not part of the United States common law).

alleged fraud and tortious interference took place in Hong Kong because Defendants were purportedly unjustly enriched there, and under Georgia law, this is the location of the unjust enrichment. *See HostLogic Zrt v. GH Int'l, Inc.*, No. 6:13-cv-982, 2014 WL 2968279, at *8 (M.D. Fla. June 30, 2014) (under *lex loci contractus*, unjust enrichment takes place where defendant "wrongfully retained the benefit conferred"); *Carter v. Porsche Cars N. Am., Inc.*, No. 1:19-cv-5508-MLB, 2021 WL 6805718, at *4 (N.D. Ga. June 25, 2021) (Georgia applies *lex loci contractus* to unjust enrichment claims).

Accordingly, the Tort Claims are governed by Hong Kong law, which supports the dismissal of each of the Tort Claims. *See* Weeks Decl. Ex. 1, Legal Opinion of Hylas Chung, dated February 21, 2022 ("Chung Opinion"). Even applying Georgia law, Plaintiffs' Tort Claims fail.

The sole remaining claims are Plaintiffs' contract-related claims, which are undisputedly governed by Delaware law pursuant to the parties' agreements; the breach of fiduciary duty claim, governed by Delaware law[4]; and the Section 10(b)

---

[4] Plaintiffs confusingly allege that Defendants owed fiduciary duties to Plaintiffs, FAC ¶ 98, ***non-party*** Kanopy Baby, *id.* ¶ 97, and ***non-party*** Kanopy International, *id.* ¶ 100. To the extent Plaintiffs allege a breach of fiduciary duties owed to Plaintiff Kanopy Holdings, a Delaware entity, those claims are governed by Delaware law. *See infra* n.7. Because Plaintiffs cannot bring a claim on behalf of a non-party, Defendants need not respond with respect to any alleged claim for

claim, governed by U.S. federal securities law.  These claims fail on independent grounds and cannot survive dismissal.

## III.    **Plaintiffs' Tort Claims Must Be Dismissed For *Forum Non Conveniens***

In deciding whether to dismiss claims on grounds of *forum non conveniens*, courts in this Circuit[5] must determine whether "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001). Each factor weighs in favor of dismissal here.

Hong Kong is an adequate alternative forum for the resolution of the Tort Claims because it has an established legal system that recognizes these claims.  *See generally* Chung Opinion; *see also Ford v. Brown*, 319 F.3d 1302, 1311 (11th Cir.

---

duties owed to non-parties Kanopy Baby or Kanopy International should that be Plaintiffs' intention in their ill-pled FAC.  *See Estate of Eller v. Barton*, 31 A.3d 895, 897 (Del. 2011) (a required element of a breach of fiduciary duty claim is a fiduciary duty owed ***to the plaintiff***).

[5] In this Circuit, the *forum non conveniens* analysis is a question of venue and so the federal law of *forum non conveniens*, not Georgia law, applies.  *Sibaja v. Dow Chemical Co.*, 757 F.2d 1215, 1219 (11th Cir. 1985).

2003) (finding Hong Kong is an adequate forum).[6]  And, to the extent Hong Kong declines to exercise jurisdiction over these claims, Plaintiffs can refile here without prejudice.  *See Ford*, 319 F.3d at 1311 (noting conditional dismissal obviated need to presumptively show foreign jurisdiction would recognize all claims).

The public and private factors weigh decidedly in favor of dismissal. "Perhaps the most important 'private interest' of the litigants is access to evidence."  *Ford*, 319 F.3d at 1308.  A case should be brought in a foreign jurisdiction when evidence and witnesses are in a foreign jurisdiction, when there is easier access to compulsory process and lower cost for obtaining witnesses, and when, as here, "all of the alleged acts occurred in Hong Kong."  *Id.*  Moreover, Hong Kong law governs the Tort Claims in this case, *see supra* Section II, which is a "very important [public] factor" in the *forum non conveniens* analysis.  *Id.* at 1310 (noting torts are "rife with nuances that are not consistently found throughout all jurisdictions" and "the foreign country is ordinarily the best place to litigate a dispute"); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) (it is "[f]ar better" that a case be tried in the governing law's jurisdiction).

---

[6] Although such opinion on foreign law is not required, *Ford*, 319 F.3d at 1310 n. 26, Defendants provide Mr. Chung's expert opinion to further demonstrate that Hong Kong is the proper jurisdiction and venue for this dispute.

For these reasons, the Court should dismiss Plaintiffs' Tort Claims.

## IV. <u>The FAC Should Be Dismissed For Failure To State A Claim Under Rule 12(b)(6)</u>

### A. <u>Plaintiffs Fail To Allege Any Defendants' Purported Misconduct With The Required Specificity.</u>

Initially, the pleading requirements of Rule 8 are simply not met when a complaint lumps all defendants together and does not specify who was engaged in what activity. *Paws Holdings v. Daikin Indus.*, No. CV 116-058, 2017 WL 706624, at *11 (S.D. Ga. Feb. 22, 2017) (plaintiff "must clearly and concisely state the circumstances, occurrences and events which support each of its claims, including which specific Defendant(s) committed each specific act of which it complains").

For every one of Plaintiffs' claims, they shotgun plead all Defendants together and do not specify who was involved in any particular challenged activity. Each of Plaintiffs' claims makes reference to "Defendants" generally but makes no mention of the specific actions of any individual Defendant. *See generally* FAC. This falls short of even the most basic pleading requirements. *See Paws Holdings*, 2017 WL 706624, at *11; *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is

impermissible shotgun pleading).  It is particularly egregious where, as here, Plaintiffs' common law fraud and Section 10(b) claims carry heightened pleading requirements.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).  The FAC should be dismissed for failure to afford adequate notice to each of the Defendants, particularly W L Knitting who is not even a party to the Agreements, *see infra* pp. 5–7, of the claims against them.  *Murphy v. Warren*, No. 1:12-cv-3317-WSD, 2015 WL 363023, at *3 (N.D. Ga. 2015) ("[W]here a plaintiff . . . fails to allege any specific injury or legal violation committed by the captioned defendant in the complaint, the plaintiff fails to state a plausible claim for relief that would allow the Court to reasonably infer that the captioned defendant is liable to plaintiff.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B.  <u>The FAC Does Not Satisfy Rule 9(b) Or The PSLRA.</u>

#### 1.  <u>Plaintiffs' Securities Fraud Claim Is Inadequately Pled.</u>

To state a claim under Section 10(b) of the Exchange Act, Plaintiffs must allege "(1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with purchase or sale of security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) causal connection between the material misrepresentation or omission and the loss."  *Mizzaro*, 544 F.3d at 1237.  A pleading which does not allege even ***one*** of these elements with particularity fails

to state a viable claim and must be dismissed.  *See id.* at 1254–55; *see also* 15 U.S.C. § 78u-4(b)(1).

Plaintiffs' Section 10(b) claim is indecipherable and simply recites the formulaic elements of a Section 10(b) claim, *see* FAC ¶ 94, and then proceeds to speculate that "Defendants violated" the law "[b]y engag[ing] in the conduct described above," *id.* ¶ 95.  Due to this boilerplate pleading, Defendants cannot discern what the ***factual basis*** of this claim is, leaving them to guess at the claim being asserted against them.  *See supra* Section IV(A).  Plaintiffs have utterly failed to establish any one of the requisite elements of a Section 10(b) claim.

*First*, Plaintiffs fatally do not allege ***any*** material misrepresentation or omission made specifically ***by each Defendant*** sufficient to give rise to fraud under the Private Securities Litigation Reform Act's ("PSLRA") heightened pleading standard.  Plaintiffs do not plead, as they must, particular ***facts*** existing at the times challenged statements were made that are inconsistent with those statements.  *See IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016).  The FAC makes no attempt to distinguish between any of the Defendants and does not point to a single representation upon which Plaintiffs relied in making decisions relating to the Agreements, as amended.  Instead, the FAC is replete with general statements that

- 15 -

Defendants misstated what they had done with third-party investors and Hong Kong regulators. *See* FAC ¶¶ 48, 51–52, 89–92, 94–95.

*Second*, there is no allegation that any of the Defendants intended to defraud Plaintiffs or acted with scienter. Plaintiffs must plead facts that give rise to an inference of scienter that is "cogent," "strong," and "at least as compelling as any opposing [non-fraudulent] inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *see also Mizzaro*, 544 F.3d at 1238. Plaintiffs have utterly failed to do so, as they do not allege which of W L Group, W L Knitting, and Mr. Yuen "knew what, how they knew it, or when." *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1201 (N.D. Ga. 2007).

*Third*, there are no allegations that Plaintiffs suffered any damages. *See Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1559 (11th Cir. 1989) ("'Fraud without damage . . . gives no cause of action'").

*Fourth*, Plaintiffs do not articulate ***any theory*** of loss causation, which requires that a defendant's misrepresentations be a "reasonably direct, or [a] proximate" cause of a plaintiff's losses. *Patel v. Patel*, 761 F. Supp. 2d 1375, 1381 (N.D. Ga. 2011). This too is fatal to their claim. *Id.* (dismissing Rule 10b-5 claim for failure to plead loss causation).

*Finally*, Plaintiffs' do not make ***any allegations of fraud whatsoever***— specific or otherwise—against Defendant W L Knitting.  Plaintiffs allege generally that "Defendants" made false representations in connection with the Agreements.  *See* FAC ¶¶ 94–95.  W L Knitting is not a party to either of these Agreements.  *See supra* pp. 5–7.  And, while it is true that W L Knitting is a party to the Kanopy Framework Agreement, the FAC contains no allegations of fraud in connection with that agreement.

Dismissal is warranted here, as Plaintiffs have not adequately pled a single element of a Section 10(b) fraud claim—let alone all elements, as they must.

### 2.    Plaintiffs Fail to State A Claim for Common Law Fraud.

Hong Kong law applies to Plaintiffs' common law fraud claim, and the elements under Hong Kong law are the same as those under Georgia law.  *See* Chung Opinion at ¶ 6; *see also Worsham v. Provident Cos.*, 249 F. Supp. 2d 1325, 1331 (N.D. Ga. 2002).  Plaintiffs also must plead fraud with particularity pursuant to Rule 9(b).  *See Crawford's Auto Ctr., Inc. v. State Farm Mutual Auto. Ins. Co.*, 945 F.3d 1150, 1161 (11th Cir. 2019) (finding fraud claims under North Carolina and Pennsylvania law—with same elements as Hong Kong law—subject to Rule 9(b).

Because the elements of a common law fraud claim are the same as the elements of a Section 10(b) and Rule 10b-5 claim, a nearly identical analysis applies as that in Section IV(B)(1). *See Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 758 (11th Cir. 1984) ("In Georgia, the elements of common law fraud . . . are the same as the essential elements of a 10b–5 claim."). For this reason, their common law fraud claim fails as well. *See, e.g.*, *Barron v. Lampley*, No. 4:15-CV-0038-HLM, 2015 WL 12591006, at *18 (N.D. Ga. June 22, 2015); *Damian v Montgomery Cty. Bankshares, Inc.*, 981 F. Supp. 2d 1368 (2013).

Plaintiffs' common law fraud claim fails for the additional reason that they cannot recover for alleged misrepresentations that occurred ***prior to the agreements*** because the Agreements contain merger clauses. *See* Compl. Ex. A, § 7.2; Compl. Ex. B, § 10.3. Where a contract contains a valid merger clause, "any reliance on extra-contractual representations would be unreasonable." *Worsham*, 249 F. Supp. 2d at 1332; *see also Pennington v. Braxley*, 480 S.E.2d 357, 359 (Ga. Ct. App. 1997) (merger clause "bars [Plaintiff] from asserting reliance on the alleged misrepresentation not contained within the contract"). Plaintiffs nonetheless impermissibly rely on pre-contractual statements, alleging that Defendant "voluntarily and knowingly" made false representations related to shares in Kanopy International and the related transfers of those shares. FAC ¶ 89.

- 18 -

Plaintiffs do not identify any instance of fraud within the provisions of the Agreements to which this general allegation refers. Thus, any alleged misrepresentations must have been made outside the four corners of those documents during negotiations, which cannot form the basis for their claim as a matter of law. *Worsham*, 249 F. Supp. 2d at 1332.

### 3.    <u>Plaintiffs' Breach of Fiduciary Duty Claim Fails.</u>

Plaintiffs' breach of fiduciary duty claim—which sounds in fraud as it relies on entirely the same facts—must be dismissed because the allegations do not satisfy the heightened pleading standard under Rule 9(b), for the same reasons discussed above. *See, e.g.*, *Rana Fin., LLC v. City Nat'l Bank of N.J.*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018) (Rule 9(b) applies to breach of fiduciary duty claims if "the alleged fraud is the predicate for the breach") (citation omitted).[7]

Here, Plaintiffs allege precisely the same underlying conduct for their breach of fiduciary duty claim as they do for their fraud claim. *Compare* FAC ¶ 89–91

---

[7] Because Plaintiffs' breach of fiduciary duty claim is presumptively based on duties owed to Plaintiff Kanopy Holdings, a Delaware corporation, Delaware law applies. *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 291 (Del. Ch. 2015) (Delaware law applies to breach of fiduciary duty claims relating to officers and directors of Delaware corporations). Defendants need not defend any proposed claim for breach of fiduciary duties owed to ***non-parties*** Kanopy International or Kanopy Baby which could involve a different governing law.

(alleging fraud based on "falsification of invoices to disguise [the alleged] conversion" and misrepresenting facts related to the ownership of Kanopy International) *with* FAC ¶¶ 99–102 (alleging breach of fiduciary duty based on "falsification of invoices" and "misrepresenting and omitting key facts and events in [Defendants'] communication with Plaintiffs and Semir"). Plaintiffs' attempt to disguise what is nothing more than a claim for fraud as a breach of fiduciary duty claim is unavailing, and the heightened standards of Rule 9(b) apply with equal force. For the same reasons Plaintiffs' fraud claim fails, *see supra* Section IV(B)(1)–(2), Plaintiffs' breach of fiduciary duty claim likewise fails.

Even if the Court were to conclude that this claim does not sound in fraud, it would still fail as duplicative of Plaintiffs' breach of contract claims. *See Madison Realty Partners 7, LLC v. Ag ISA, LLC*, No. 18094, 2001 WL 406268, at *6 (Del. Ch. Apr. 17, 2001) (dismissing fiduciary claims as duplicative where they "are the subject of the breach of contract claims in the complaint"); *see also Gale v. Bershad*, No. 15714, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998). Here, Plaintiffs allege substantially the same conduct—namely, that Defendants failed to effectuate the Agreements, *see* FAC ¶¶ 73, 79, 100—and the same damages for both claims. *Compare* FAC ¶ 73 (seeking damages for loss of the Semir investment); *with id.* ¶ 102 (seeking damages including lost investments); *see also*

*Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 834 (Del. Ch. 2006).  Short of amounting to a fraud claim, Plaintiffs' breach of fiduciary duty claim then amounts to nothing more than an impermissible alternative pleading of their breach of contract claims, and thus, it must be dismissed.

Plaintiffs' breach of fiduciary duty claim also specifically fails with respect to W L Knitting because Plaintiffs do not allege W L Knitting served as an officer or director of any Kanopy entity and, thus, W L Knitting cannot owe—and cannot breach—any fiduciary duty.  *See Stewart*, 112 A.3d at 297 ("factual allegations in a complaint must be such that they reasonably could support a finding that a fiduciary duty existed and the defendant breached that duty") (citation omitted); *Heller v. Kiernan*, No. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd by* 806 A.2d 164 (Del. 2002).

### C.    Plaintiffs' Contract-Related Claims Fail As a Matter of Law.

#### 1.    The Agreements Themselves Bar Plaintiffs' Claims.

Under Delaware law,[8] to state a breach of contract claim, Plaintiffs must allege: (1) "existence of the contract, whether express or implied;" (2) "breach of

---

[8] The Agreements contain narrow choice-of-law provisions which provide that Delaware law governs breach of contract claims.  *See* Compl. Ex. A § 7.12 & Compl. Ex. B § 10.8; *see also supra* Section II.

an obligation imposed by that contract;" and (3) "resultant damage to the plaintiff." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). Absent any ambiguity, "'the Court interprets the contract based on the plain meaning of language on the face of the contract.'" *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (quotation omitted).

Where, as here, the "unambiguous language of a contract contradicts plaintiffs' allegations in a complaint," the Court may grant a motion to dismiss. *Id.* With respect to the SEA, Plaintiffs allege damages from Defendants' failure to deliver certain items by the Closing Date, as defined in the SEA, some of which were pre-conditions to closing. *See, e.g.*, FAC ¶ 53. According to Plaintiffs' own allegations, the SEA never closed. The SEA clearly sets forth the remedy for any alleged failure to deliver closing obligations—the termination of the SEA. *See* Compl. Ex. A at § 6.6. Plaintiffs' allegations are, at most, failures to deliver items required by closing, for which the remedy is termination of the Agreement, and not a breach of contract claim.

Similarly, Plaintiffs' allegations with respect to breach of the SPA and its subsequent addendum agreements contradict the express terms of these agreements. For example, Plaintiffs allege that damages are "in excess of $1,500,000," which presumably comes from the $1,500,000 originally due under

the SPA.  FAC ¶ 81.  But the Second Addendum Agreement superseded that provision, assigning a new, significantly lower purchase price of $500,000, *see* Compl. Ex. D § I(a), with only $250,000 of that amount becoming due before closing, *id.* § II(b).  Accordingly, the plain language of the SPA and Second Addendum Agreement directly contradict Plaintiffs' allegations in Counts I and II, defeating Plaintiffs' claims.

### 2.    Plaintiffs Have Ratified Any Alleged Breaches Of The Agreements And Forfeited Their Claims.

Plaintiffs' claims for breaches of the Agreements also fail because they have ratified the complained-of conduct through the First and Second Addendum Agreements.  The Second Addendum Agreement, for instance, explicitly states that the $1,500,000 due under the SPA "shall be cancelled and terminated, and the terms of this Second Addendum Agreement shall have full force and effect."  FAC ¶ 46.  Yet, under their claim for breach of the SPA, Plaintiffs wrongfully request damages of $1.5 million.  FAC ¶ 81.  Plaintiffs—all of whom are parties to the Second Addendum Agreement—could have contested these claims at the outset of the parties' dispute, but instead, with full knowledge of the failure of the Semir investment, chose to continue with the transaction and seek the benefits of the bargain under the Second Addendum Agreement.  Similarly, Plaintiffs include in their claim for breach of the SEA damages amounting to $26,000,000 as a result of

the termination of the Semir investment.  FAC ¶ 73.  Because Plaintiffs bargained for the loss of the Semir investment through the Second Addendum Agreement, Plaintiffs cannot now separately seek damages for the loss of that investment.

### 3. W L Knitting's Status As A Non-Party To The Agreements Bars Plaintiffs' Breach of Contract Claims.

Plaintiffs' breach of contract claims fail as to W L Knitting, in particular, because W L Knitting is not a party to the Agreements.  Plaintiffs make no allegations whatsoever against W L Knitting, beyond naming it as a defendant in the action.  FAC ¶ 5.  Plaintiffs do not allege that W L Knitting was a party to the SEA.  *Id.* ¶ 26.  And while Plaintiffs summarily claim W L Knitting is a party to the SPA, the First Addendum Agreement, and the Second Addendum Agreement, *see id.* ¶¶ 34, 42, 45, W L Knitting is ***not a party or signatory*** to those agreements, as evidenced by the agreements themselves.  *See supra* pp. 5–7.  While W L Knitting is a party to the Kanopy Framework Agreement, Plaintiffs do not allege a breach of that agreement in the FAC.  Because Plaintiffs do not allege ***any*** breach of contract on the part of W L Knitting—actionable or otherwise—Counts I and II must be dismissed with respect to W L Knitting.  *See Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.").

### 4. <u>Plaintiffs' Indemnity Claim Fails.</u>

Plaintiffs' indemnity claim also fails because Plaintiffs have not identified any damages owed to a third party as a result of Defendants' alleged conduct. Instead, Plaintiffs' claim is nothing more than a repackaging of the same purported obligations **to pay Plaintiffs** identified in Plaintiffs' breach of contract claims. But indemnity agreements, absent express provisions to the contrary, only apply to third-party claims, and not to direct claims between the parties. *See Deere & Co. v. Exelon Generation Acquisitions, LLC*, No. N13C-07-330, 2016 WL 6879525, at *2 (Del. Super. Nov. 22, 2016); *Pinkert v. John J. Olivieri, P.A.*, No. 99-380-SLR, 2001 WL 641737, at *6 (D. Del. May 24, 2001). Here, the terms of the SPA's indemnity provision do not apply to direct claims between the parties. *Compare* Compl. Ex. B § 9.1 (indemnity provision applies to "all Losses" resulting from "any breach of or inaccuracy of a representation" or "any breach of any covenant or agreement of the defaulting Party") *with Deere & Co.*, 2016 WL 6879525, at *1–2 (indemnity provision covering "any and all Losses . . . related to . . . any breach or nonperformance [of the Agreement]" applies only to third party claims). Accordingly, Plaintiffs' claim for indemnity fails as a matter of law and should be dismissed.

**D.    Plaintiffs' Remaining Tort Claims Fail As a Matter of Law.**

As noted above, Hong Kong law applies to Plaintiffs' conversion and tortious interference claims.   Fundamentally, the elements for conversion and tortious interference under Hong Kong law are the same as those required under Georgia law.   *See* Chung Opinion at ¶¶ 14, 28.   Plaintiffs' claims fail under Hong Kong law as well as under Georgia law.

**1.    Plaintiffs Have Not Sufficiently Pled A Conversion Claim.**

To sufficiently plead conversion, Defendants must engage in an act of deliberate dealing, with a specific personal property in a manner inconsistent with a party's rights which deprives that party of the use and possession of it.   Chung Opinion at ¶ 14; *see Brooks v. Branch Banking & Tr.*, 107 F. Supp. 3d 1290, 1299 (N.D. Ga. 2015).   Generally, money, which is intangible and not specifically traceable, cannot be the subject of a conversion claim.   Chung Opinion at ¶ 16; *see also Rowland v. Rowland*, No. 1:04-CV-2068-TWT, 2005 WL 3096169, at *2 (N.D. Ga. Nov. 18, 2005).

Plaintiffs cannot state a claim for conversion because the "rights in and to the Kanopy International bank accounts, accounts receivable, and all monies therein," FAC ¶ 84, are intangible "rights" and not specific and identifiable monies, and thus, cannot be subject to a conversion claim as a matter of law.   *Id.*

Also, Plaintiffs' claim against W L Knitting specifically fails because it is wholly based on a failure to transfer rights and monies under "the Parties' contracts," FAC ¶ 84, and W L Knitting is not a party to any of these agreements.  W L Knitting is not even alleged to have any contractual obligation or to have converted any property belonging to Plaintiffs.  *See Murphy*, 2015 WL 363023, at *3 (N.D. Ga. Jan. 27, 2015).

At its core, Plaintiffs' "conversion" claim boils down to a mere breach of contract claim masquerading as a tort claim, given that Plaintiffs base it entirely on Defendants' alleged failure to transfer "all rights" and "all monies" ***as provided under the Agreements***.  *Compare* FAC ¶ 84 *with id.* ¶ 70; *see also supra* Section IV(C).  This should properly be considered a breach of contract claim.  *WESI, LLC v. Compass Envtl.*, 509 F. Supp. 2d 1353, 1361 (N.D. Ga. 2007) (dismissing claim for conversion premised on failure to transfer funds pursuant to contractual obligation); *Morris v. Nat'l W. Life Ins. Co.*, 430 S.E.2d 813, 815 (1993) (conversion "does not lie on account of a mere failure to pay money due under a contract").  Tellingly, Plaintiffs' allegations admit that the parties' Agreements provide for such transfer, and these are precisely the same allegations that Plaintiffs rely upon for their breach of contract claims.  *Compare* FAC ¶ 70 (alleging Defendants "delayed, failed, and/or refused to transfer all Kanopy

International company materials, bank accounts, bank records, accounting and financial records" in breach of the SEA) *with id.* ¶ 84 ("The Parties' contracts provide that Defendants shall transfer all rights in and to the Kanopy International bank accounts, accounts receivable, and all monies therein."); *see also supra* Section IV(C).  Plaintiffs' allegations that Defendants did not transfer property due under the Agreements are not to be mistaken for anything more than "mere surplusage" and do not "add something considerable in the nature of a tort . . . beyond breach of contract."  *Faircloth v. A.L. Williams & Assocs., Inc.*, 426 S.E.2d 601, 604 (Ga. Ct. App. 1992).  Consequently, Count III warrants dismissal.

### 2.    The FAC Does Not State A Tortious Interference Claim.

To state a claim for tortious interference, Plaintiffs must show that Defendants: (1) acted unlawfully against a third party; (2) interfered with the actions of the third party in which Plaintiffs had an economic interest; (3) intended to cause loss to Plaintiffs; and (4) caused actual loss to Plaintiffs.  Chung Opinion at ¶ 28; *see also Rema Tip Top/N. Am., Inc. v. Shaw-Almex Indus., Ltd.*, No. 1:15-CV-01838-AT, 2015 WL 11492540, at *2 (N.D. Ga. Nov. 18, 2015).

Plaintiffs fail to show that Defendants acted unlawfully.  Also absent from Plaintiffs' allegations is any showing that Defendants acted with the intent to injure Plaintiffs.    Plaintiffs do not provide any factual allegations showing that

Defendants induced Amazon—or any alleged customer of Plaintiffs—to not enter into or continue a business relationship with Plaintiffs. *See generally* FAC. Instead, Plaintiffs' sole allegation is that "Defendants have actively solicited Amazon in order to usurp Plaintiffs existing business with Amazon." *Id.* ¶ 50. Vague, conclusory allegations that Defendants interfered with Plaintiffs' customer relationships, with no statement of how or to what extent, are insufficient. *See Elavon, Inc. v. Wachovia Bank, Nat'l Ass'n*, No. 1:09-CV-0139-ODE, 2009 WL 10699138, at *4 (N.D. Ga. Oct. 13, 2009) (plaintiff's speculation regarding defendant's motivation, when no ***facts*** indicate malicious or improper action, cannot support tortious interference claim); *Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1384 (M.D. Ga. 2005) (conclusory allegations of harm, without specific, identifiable losses, will not support claim). Alternatively, to the extent premised on a failure to transfer property pursuant to the agreements in the transaction, *see* FAC ¶ 108, this claim is duplicative of Plaintiffs' breach of contract claims and, therefore, should be dismissed, *see supra* Section IV(D)(1).

Additionally, if Georgia law applies, Plaintiffs' tortious interference claim should be dismissed under the stranger doctrine, as Defendants are all interested

parties in the contracts allegedly interfered with.[9]  Under the stranger doctrine, a defendant with a "legitimate interest" in the business relationship allegedly interfered with—whether or not a signatory to the contract—is not liable for tortious interference.  *Cox v. City of Atlanta*, 596 S.E.2d 785, 788 (Ga. Ct. App. 2004); *see also Disaster Servs., Inc. v. ERC P'Ship*, 492 S.E.2d 526, 529 (Ga. Ct. App. 1997).   Here, by Plaintiffs' own allegations, Defendants are deeply intertwined with Plaintiffs and Plaintiffs' business dealings.  Defendants were shareholders of Kanopy Holdings, and the underlying narrative of the dispute is a series of transactions to divest Defendants of their holdings in Kanopy entities. Therefore, the claim for tortious interference must be dismissed.

### 3.   Plaintiffs' Conversion And Tortious Interference Claims Also Are Barred By The Economic Loss Rule.

Plaintiffs' conversion and tortious interference claims are barred by the economic loss rule which "generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."  *Gen.*

---

[9] W L Knitting is not a party to any agreement other than the Kanopy Framework Agreement.  *See supra* Section IV(C)(3).  Nevertheless, W L Knitting would still be an interested party for the purposes of the stranger doctrine because W L Knitting has a "legitimate interest" in the business of W L Group and the overall transaction structure contemplated in the Kanopy Framework Agreement.  *See Cox v. City of Atlanta*, 596 S.E.2d 785, 788 (Ga. Ct. App. 2004).

*Elec. Co. v. Lowe's Home Centers, Inc.*, 608 S.E.2d 636, 637 (Ga. 2005); *see also Nored & Assocs., Inc. v. ADP Inc.*, No. 1:20-cv-00239-WMR, 2020 WL 10576414, at *4-5 (N.D. Ga. Sept. 17, 2020). "The purpose of the economic loss rule is to avoid 'double recovery for the same wrongdoing.'" *Nored & Assocs., Inc.*, 2020 WL 10576414, at *5 (quoting *Gen. Elec. Co.*, 608 S.E.2d at 638).

Here, Plaintiffs repackage their contract claims and allege the exact same damages for both their breach of contract claims and Tort Claims. *Compare* FAC ¶ 73 *with id.* ¶ 110. Because Plaintiffs have not alleged any independent duties violated beyond contractual duties, and because Plaintiffs' damages are the same damages suffered as a result of the alleged breaches of contract, Plaintiffs' remaining tort claims are barred by the economic loss rule. *See Nored & Assocs.*, 2020 WL 10576414, at *5 (where plaintiff alleged only economic losses flowing from breach of agreement, economic loss rule prevented tort recovery).

### E.    Plaintiffs Cannot Recover Punitive Damages Or Attorneys' Fees.

Because Plaintiffs have not alleged an actionable underlying claim, their "claims" for punitive damage and attorneys' fees fail. *See, e.g.*, *Irving v. Bank of Am.*, 497 F. App'x 928, 930 (11th Cir. 2012) ("Absent a sufficiently-pleaded underlying tort, Plaintiff's derivative claim for punitive damages must also be dismissed."); *J. Andrew Lunsford Props., LLC v. Davis*, 572 S.E.2d 682, 685 (Ga.

Ct. App. 2002) ("[T]he claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims.").

In addition, the FAC fails to include plausible allegations supporting damages under either statute. Defendants' alleged actions cannot be construed as malicious, willful, wanton, or oppressive. *See* O.C.G.A. § 51-12-5.1(b) (requiring evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences"). Nor have Plaintiffs adequately alleged that Defendants acted in bad faith or caused Plaintiffs unnecessary trouble. *See* O.C.G.A. § 13-6-11 (litigation expenses are only recoverable "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense"). Instead, Plaintiffs make "naked, conclusory allegations" and "quote[]—almost verbatim—the statutes at issue without alleging any facts to support [their] entitlement to relief." *Sheppard v. Int'l Bus. Machines Corp.*, No. 1:20-CV-0959-WMR-LTW, 2021 WL 2649455, at *8 (N.D. Ga. May 27, 2021). This cannot support an award under either statute.

Because Plaintiffs' claims fail and the required bad acts which form the basis of punitive damages and attorneys' fees have not been adequately alleged, Plaintiffs' Counts IX and X likewise fail.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court

dismiss the FAC in its entirety.

Respectfully submitted, this 28th day of February, 2022.

/s/ *Mary M. Weeks*
Mary M. Weeks, GA Bar No. 559181
Bianca N. DiBella, GA Bar No. 820341
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, Suite 3000
Atlanta, GA 30308
Tel:   (404) 885-3000
Fax:  (404) 885-3900
mary.weeks@troutman.com
bianca.dibella@troutman.com

*Attorneys for Defendants*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

Counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1.C.

This 28th day of February, 2022.

*/s/ Mary M. Weeks*
Mary M. Weeks

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which serves notification of such filing to all CM/ECF participants.

This 28th day of February, 2022.

*/s/ Mary M. Weeks*
Mary M. Weeks