## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KANOPY HOLDINGS, INC. and
CHRISTOPHER RORK,

                      Plaintiffs,

      v.

WL GROUP LTD, PO CHIU YUEN (aka
Larry Yuen), and WING LUEN
KNITTING FACTORY LTD.,

                Defendants.

Case No.  1:21-CV-03304-SDG

### DECLARATION OF MARY M. WEEKS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

I, Mary M. Weeks, state under penalty of perjury:

1.

I am over 18 years old.  The information contained in this declaration is true and correct and based upon my personal knowledge.

2.

I am a partner with Troutman Pepper Hamilton Sanders LLP, counsel for Defendants in the above-styled litigation.  This Declaration is submitted in support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint,

filed contemporaneously herewith, and is based upon my understanding of the matters herein through my representation of Defendants.

3.

Attached hereto as Exhibit 1 is a true and correct copy of the Legal Opinion of Hylas Chung, dated February 21, 2022.

4.

I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 28th day of February, 2022.

*/s/ Mary M. Weeks*                              
Mary M. Weeks

# EXHIBIT 1

*Kanopy Holdings, Inc. & another v W L Group Ltd. and others (U.S. litigation)*

---

## LEGAL OPINION ON HONG KONG LAW

---

1.  Instructing solicitors, Messrs. Gary Lau & Partners, received instructions from attorneys acting for the Defendants in an action taking place in the United States. I am, in turn, instructed to give a written legal opinion on certain issues relating to Hong Kong law. I am told that this written legal opinion is sought for the use in an ongoing litigation, namely a case between Kanopy Holdings, Inc. and Christopher Rork as Plaintiffs, and W L Group Ltd., Po Chiu Yuen (also known as Larry Yuen), and Wing Luen Knitting Factory Ltd. as Defendants (case number 1:21-cv-03304-SDG).

2.  I was asked to give my opinion on: (1) whether the following tort claims are recognised by Hong Kong law; (2) the elements for each of the tort claims; and (3) the assumption of jurisdiction by the courts of Hong Kong. I do not at this time offer any opinion as to the adequacy or validity of Plaintiffs' foregoing claims, and I offer no opinion as to the applicable law, adequacy, or viability of any claims not addressed herein. The claims are: (i) Fraud; (ii) Conversion; (iii) Breach of Fiduciary Duty, in the context of a director towards a company limited; and (iv) Tortious Interference with Contract. I will give my opinion according to the order of the claims stated above, and then move on to the assumption of jurisdiction by Hong Kong courts.

3.  Before formulating this written opinion, I have perused the relevant case papers provided to me by my instructing solicitors. These papers include:

    (1) The Amended Complaint;

(2) Exhibit A – Share Exchange Agreement;

(3) Exhibit B – Share Purchase Agreement;

(4) Exhibit C – First Addendum Agreement; and

(5) Exhibit D – Second Addendum Agreement.

## A.  <u>Fraud</u>

### I.    *Whether this claim is recognised in Hong Kong*

4.    Fraud is actionable under Hong Kong law as the tort of deceit. It is a common law cause of action, meaning that it is not prescribed by statute.[1] In fact, this tort is also known as "fraudulent misrepresentation".[2] However, fraudulent misrepresentation is actionable under the Misrepresentation Ordinance (Cap. 284) of the laws of Hong Kong.

5.    For the present purposes, I will only deal with the tort of deceit as the case papers indicate that the Plaintiffs are pursuing the same claim against the Defendants, i.e. Count IV in the Amended Complaint, in the present litigation.

### II.   *The elements of this claim*

6.    A person commits the tort of deceit when he "*makes a false statement, knowing it to be untrue or being reckless as to whether it is true or not, with the intent that the claimant will rely on it*."[3] The elements also include that the claimant was in fact induced by the representation to act or refrain from acting, and that the claimant had suffered loss as a result.[4]

7.    The required element to make out the "false statement" is that the statement or representation, whether made expressly or by implication, was materially false. A substantially correct representation is not a misrepresentation.[5] The key question to

---

[1] *Halsbury's Laws of Hong Kong* (2022) at [275.090]
[2] *Civil Fraud: Law, Practice and Procedure* (2018) at [1-001]
[3] *Halsbury's Laws of Hong Kong* (2022) at [131.125]
[4] *Civil Fraud: Law, Practice and Procedure* (2018) at [1-003]
[5] Ibid., at [1-035]

2

determine the falsity of the statement in this context is whether, on the difference between what was represented and what was actually correct, the claimant would not have acted differently.[6] If the claimant would not have acted differently, then the statement is not false in this sense.

8.  With respect to the knowledge or recklessness element, the law requires the representor's, i.e. the person making the statement, state of mind to be either "made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false."[7] Therefore, the representee is required to prove that the representor made the misrepresentation under either one of the states of mind aforesaid to satisfy this element.

9.  The element that follows is the representor's "intention to deceive". This element requires a plaintiff to show that the defendant had the intention to induce the plaintiff to act or refrain from acting on the basis of a false apprehension of the true position of matters.[8] The intention does not need to be an intention to cause the representee to undertake a specific action, but rather deals with the general situation where the representee would act upon such statement. Hence, the requisite intention is established once the plaintiff shows that the defendant intended the plaintiff to act upon the statement he made.[9]

10. Actual inducement is the next element required to establish a claim for the tort of deceit. The misrepresentation/misstatement needs not be the sole cause of the representee's action.[10] The representee needs to show that the statement was at least

---

[6] *Avon Insurance Plc v Swire Fraser* [2000] 1 All ER (Comm) 573, [17]
[7] *Derry v Peek* (1889) 14 App Cas 337, 374
[8] *Civil Fraud: Law, Practice and Procedure* (2018) at [1-096]
[9] Ibid., at [1-101]-[1-102]
[10] Ibid., at [1.114]

actively present in his mind, and that he would have done differently but for the misrepresentation.[11]

11.  Lastly, a plaintiff will need to show that he suffered damages as a result of his reliance on the said misrepresentation/misstatement. The plaintiff will need to show the causal linkage between the inducement and the loss suffered on a "but for" basis.[12]

12.  In summary, I am of the opinion that a claim of fraud is actionable under Hong Kong law as a tort of deceit. I do not at this time offer any opinion as to the viability or adequacy of Plaintiffs' fraud claim.

## B.  Conversion

### I.  *Whether this claim is recognised in Hong Kong*

13.  Under Hong Kong law, the tort of conversion is well-defined as (1) "*an act of deliberate dealing with a chattel in a manner inconsistent with another's right whereby that other is deprived of the use and possession of it*" and (2) "*must be conversion of corporeal personal property; choses in action cannot be converted*".[13]

### II.  *The elements of this claim*

14.  In summary, the elements of the tort are:

(1)  "An act of deliberate dealing";

(2)  "With a chattel", the chattel being a specific personal property but not a chose in action; and[14]

(3)  "In a manner inconsistent with another's right whereby that other is deprived of the use and possession of it".

---

[11] Ibid., at [1.117]-[1.118]
[12] Ibid., at [1.135]
[13] *Silver Stone Development Ltd v Lau Kwong Ching* [2007] 2 HKLRD 717, 721
[14] *Halsbury's Laws of Hong Kong* (2022) at [380.425]

4

15. The act of conversion can be carried out in different ways, including, among other things, conversion by taking or receiving properties and conversion by keeping or refusal to return.[15] For the former way of conversion, it requires the tortfeasor to receive or take possession of another's goods with the intention to assert some right or dominion over them, or to deal with them in a way to negate the true owner's rights or assert an inconsistent right.[16] On the other hand, conversion by keeping or refusal to return requires the tortfeasor keeping the goods to refuse surrendering the goods on demand. In that, the demand for the return of the goods needs to be unconditional and the property specifically identified, and the refusal must be unequivocal.[17]

16. With regard to the subject matter of conversion, the common law tort of conversion recognises only that the corporeal personal property can be converted. Therefore, an intangible property cannot be converted.[18] Intangible properties include choses in action, but conversion of documents proving titles or negotiable documents may be actionable. Money is not actionable for conversion if it has passed into currency. It is only actionable if the money can be traced into the defendant's hands or *in physicum*.[19]

17. A leading case in this area of law states precisely the difference between common law and the law applicable in the United States. In *OBG Ltd v Allan*, it was held that "*I have no difficulty with the proposition that a domain name may be intangible property, like a copyright or trade mark, but the notion that a registrar of such property can be strictly liable for the common law tort of conversion is, I think,*

---

[15] *Clerk and Lindsell on Torts*, 22nd ed. (2018) at [17-08]
[16] Ibid., at [17-09]
[17] Ibid., at [17-25]
[18] Ibid., at [17-36]
[19] Ibid., at [17-37]

*foreign to English law.*"[20] However, "*in cases in which the title to the debt was evidenced by a negotiable instrument, or even in some cases where it was not negotiable, the wrongful misappropriation of the document could cause actual loss to the true creditor, who might not be able to recover the debt. That left a gap in the law. The judges filled it by treating the misappropriation as a conversion of a chattel equal in value to the debt which it evidenced.*"[21] In summary, I am of the opinion that instruments, whether negotiable or not, may be actionable under the tort of conversion.

18. The third element simply consists of the questioning or denial of the owner's title, or the exclusion of the claimant from the use or possession of his goods.[22] It is conversion if an act of a defendant deprives plaintiff of the right to possession, or amount to a substantial interference with that right, even if there is no physical dealing or possession.[23]

19. In conclusion, I am of the opinion that a claim for conversion is actionable under the common law tort of conversion in Hong Kong. I do not at this time offer any opinion as to the viability or adequacy of Plaintiffs' conversion claim.

## C. Breach of fiduciary duty as director of company limited

### I. Whether this claim is recognised in Hong Kong

20. It is an established principle in Hong Kong law that a director of a company limited owes fiduciary duties to the company. As Spigelman NPJ of the Court of Final Appeal puts it, "*The fact that a director has fiduciary duties is a well established category, with well established incidents, arising from the nature of the office.*"[24]

---

[20] [2008] 1 AC 1, 44
[21] Ibid.
[22] Ibid., [17-06]
[23] *Halsbury's Laws of Hong Kong* (2022) at [380.431]
[24] *Poon Ka Man Jason v Cheng Wai Too* (2016) 19 HKCFAR 144, 175

## II.    *The elements of this claim*

21.    Not every breach of duty by a person in a fiduciary position is a breach of fiduciary duty. A director of a company is said to be in the position of trust and confidence. In determining whether a fiduciary has breached its fiduciary duty, such duty should involve the "single-minded loyalty" of the fiduciary. For instance, there is "*(a) the non-conflict duty of a fiduciary [which] means that he has a duty not to place himself in a position where his or anyone else's interests would or may conflict with duties owed to the beneficiary; [and] (b) the duty not to profit, i.e., a duty not to make a profit from the fiduciary's position.*"[25]

22.    With regard to the non-conflict duty, the uncontroversial principle is that when a director "*puts himself in a position where his self interest conflicts with the duties he owes to the company **(typical examples would be to carry on a business in the same line or area as the company, or to take customers from the company)**, he is under a liability to account for the profits he has made by reason thereof. Such liability is strict and does not depend on the presence of any ill-will or dishonesty. Nor does it depend on proof of loss.*"[26] (emphasis added)

23.    The rule is self-explanatory that a director is liable for breach of fiduciary duty to the company when his self interest conflicts with that of the company for which he works. It is not an excuse that the director was the person who initially set up the business, and then starts another company to take over the business to avoid impediments from or disagreements by other directors and shareholders.[27] By extension, I opine that it also applies in cases where a director diverts business opportunities before formally resigning from directorship of the previous company.

---

[25] *Hong Kong Corporate Law* (2019) at [3253]
[26] *Law Kwok Kei v Vicky Siu Wing Kee* (unreported, HCA 1825/2005, 9 October 2014), [10]
[27] *Hong Kong Corporate Law* (2019) at [4302]

24. For the duty not to profit, the law is clear and trite. "*If the director makes an unauthorised profit from the directorship, the company is entitled to a legal remedy and this covers the right to recover the secret profits so made. It is irrelevant that the director has acted with complete probity and even in the interests of the company or that the secret profit would not be something that the company might or could earn. Nor is it relevant if the company has not suffered any loss.*"[28] Therefore, the company would be entitled to claim the profits made by the director when the director breached his fiduciary duty and made unauthorised profits.

25. Meanwhile, it must be noted that directors of a company owe the fiduciary duties towards the company as a whole, and not to individual shareholders.[29] As such, common law does not allow individual shareholders to take actions against company directors for their breach of fiduciary duties owed to the company. However, the Companies Ordinance (Cap. 622) of the laws of Hong Kong provides for a statutory scheme to allow shareholders of a company or of an associated company to bring statutory derivative actions against such directors under Section 732 of the Companies Ordinance. Section 733 of the Companies Ordinance provides that the Court may grant leave (permission) for a statutory derivative action to be commenced, in the company's name,[30] if such application is on the face in the company's interests, and there is a serious question to be tried but the company has not commenced proceedings by itself.

26. In summary, I am of the opinion that a claim for breach of directors' fiduciary duties is available under Hong Kong law by initiating a statutory derivative action under

---

[28] Ibid., at [4151]
[29] Ibid., [3303]
[30] Companies Ordinance (Cap. 622), s.732(4)

the Companies Ordinance. I do not at this time offer any opinion as to the viability

or adequacy of Plaintiffs' breach of fiduciary duty claim.

**D.  Tortious interference with contract**

*I.    Whether this claim is recognised in Hong Kong*

27.    Common law as applied in Hong Kong recognises that a wrongful interference by a

defendant with the actions of a third party, with the intention and effect of causing

loss to the plaintiff, as a form of economic tort actionable in court.[31] This tort is

applicable to interferences with contractual relationships.

*II.    The elements of this claim*

28.    The elements of this tort of unlawful interference include: [32]

(1)  Unlawful acts used against a third party, where such act is also independently

actionable;

(2)  Interference with the actions of the third party in which the plaintiff has an

economic interest;

(3)  The intention to cause loss to the plaintiff by the use of unlawful means; and

(4)  The plaintiff suffering actual loss.

29.    It is required that the act be actually unlawful to make out the unlawful acts

element.[33] The actionability by the third party is also relevant, subject to an exception

that if it is unactionable merely because the third party did not suffer loss, it does not

render the unlawful act to be excluded from the tort.[34] Examples of unlawful acts

include torts, such as deceit, breach of contract, breach of fiduciary duty, and other

matters that are unlawful in civil or criminal law.[35]

---

[31] *Civil Fraud: Law, Practice and Procedure* (2018) at [4-001]
[32] Ibid., at [4-009]
[33] Ibid., at [4-010]
[34] *OBG Limited v Allan* [2008] 1 AC 1, 32C
[35] *Civil Fraud: Law, Practice and Procedure* (2018) at [4-015]-[4-021]

30.  To make out the interference element of the cause of action requires the presence of the plaintiff's economic interest in the interfered actions of the third party. In showing the economic interest, it is not necessary for the interest to flow from a contract. The economic interest involved may well be an economic expectation.[36] However, such interference must also be strong enough to affect the third party's freedom to deal with the plaintiff.[37]

31.  Case law has distinguished the difference between ends, means and consequence in relation to the intention involved in this tort. It has been decided that if the harm to the plaintiff is meant to be an end or a means, then the intention is made out. However, if the harm is merely a foreseeable consequence of the act and interference, then the intention has not been made out.[38] In addition, if the defendant would have done the same in any event, i.e. there is no "but for" linkage between the interference and the intention, the requisite intention is not met.

32.  Lastly, as a matter of general principle, the plaintiff must establish his loss in order to claim relief from the defendant.

33.  In summary, I am of the opinion that a claim for tortious interference with contract is actionable under Hong Kong law. I do not at this time offer any opinion as to the viability or adequacy of Plaintiffs' tortious interference claim.

**E.  Choice of forum – Assumption of jurisdiction by Hong Kong courts**

34.  The ultimate question of whether Hong Kong courts should assume jurisdiction over the present case is guided by the principle of *forum conveniens*. There is no law preventing the Hong Kong courts to assume jurisdiction, provided that the connecting factors are sufficient to justify the courts in Hong Kong to take up the

---

[36] Ibid., [4-034]
[37] *OBG Limited v Allan* [2008] 1 AC 1, 32H-33A
[38] *Civil Fraud: Law, Practice and Procedure* (2018) at [4-040]

case. As there is no jurisdictional provision or agreement involved in the claims dealt with above, which are torts rather than contractual claims, the question will be dealt with by considering the connecting factors.

35.  Before discussing the connecting factors, it must be noted that if a plaintiff needs to serve its Writ of Summons, i.e. his claim, out of jurisdiction, Order 11 of the Rules of the High Court (Cap. 4A) mandates that such service will require the Court's leave.[39] When the case is such a "long-arm case", the applicable rule is reversed, and Hong Kong courts will not exercise jurisdiction unless the plaintiff satisfies that Hong Kong is clearly a more appropriate forum than any other suggested by the defendant.[40]

36.  As the Defendants in the present case are all domiciled and their business headquarters are in Hong Kong, there is no question of a reversed case where the appropriateness of Hong Kong's jurisdiction needs to be proved. I am of the opinion that:

 (1)  Hong Kong courts will not refuse jurisdiction if it is asked to hear the case; and

 (2)  Hong Kong courts will not dismiss the case by reason of *forum non conveniens* for the case to be heard in another jurisdiction.

As to whether the U.S. court is a *forum conveniens*, it is not a matter for me to opine on as it involves U.S. law.

37.  A list of connecting factors relevant to the determination of Hong Kong's appropriateness include: [41]

 (1)  The substantive applicable law;

 (2)  The predominant languages of witnesses and documents;

---

[39] Rules of the High Court (Cap. 4A), Order 11 rule 1
[40] *The Conflict of Laws in Hong Kong*, 3rd ed. (2017) at [3.082]
[41] Ibid., at [3.100]

(3) Location of witnesses and documents;

(4) The location of relevant assets;

(5) Geographical centre of gravity of the parties' relevant dealings; and

(6) Enforceability of judgment outside the jurisdiction which heard the case.

38. A Hong Kong court will appropriately weigh the connecting factors set out above and conduct a balancing exercise based on its conclusions on these factors. All of the connecting factors must be considered together and as a whole in the balancing exercise.

*I.*    *Applicable substantive law*

39. In relation to the applicable substantive law, the concepts of *lex fori* (law of the forum) and *lex loci delicti* (law of the place where the tort is committed) are of relevance when torts are involved. The general principle is that the "*rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the State which, with respect to that issue, **has the most significant relationship with the occurrence and the parties**.*"[42] (emphasis added)

40. The question of "most significant relationship" is a question of fact. Taking the Plaintiffs' case to the highest, the Plaintiffs could only show that the Plaintiffs themselves are significantly related to the U.S. However, the Defendants are all Hong Kong citizen/companies, and the Plaintiffs have only alleged "*a substantial part of the events or omissions […] occurred in this District*" in paragraph 8 of the Amended Complaint.

41. At this point, I note that it is likely that an action on a tort committed outside the jurisdiction can be brought in the courts of Hong Kong. The "double actionability rule" requires that the act be actionable under both the law of the forum and the law

---

[42] *Dicey, Morris & Collins: The Conflict of Laws*, 15th ed. (2018) at [35-005]

of the place where the tort was committed.[43] According to paragraph 8 of the Amended Complaint, the Defendants were located in the U.S. at the time of committing the torts, the *lex loci delicti* would be the law of the U.S. The question of whether or not the law of the U.S., and in particular the State of Georgia, permits these claims to be actionable is a question for U.S. lawyers, and I am not qualified to opine on the matter. Hence, the question of whether "double actionability" has been met ultimately depends on the actionability of these torts in the U.S. courts.

42. Meanwhile, different rules apply to the allegations of breach of fiduciary duties. Under Hong Kong law, fiduciary duty is seen as an equitable obligation, and the cause of action for such breach is equitable in nature. Generally, the rules governing conflict of laws in respect of equitable claims is *lex fori*, which means that the court would adopt the laws of the forum when it exercises jurisdiction to hear the claim.[44] Therefore, it is plain that Hong Kong courts would adopt Hong Kong law when determining the Plaintiffs' claim for breach of fiduciary duties.

43. In summary, I opine that the factor of applicable substantive law falls squarely on the side of Hong Kong being *forum conveniens* as explained above.

**II.    *Predominant languages of witnesses and documents***

44. This is a pure question of fact which would no doubt relate to the ability of a court taking up the case. If the witnesses speak a different language and the documents are written in a different language from the language used in a court, the court will require much time and costs to translate the testimonies and documents. That court would also run a risk of errors in translation. Therefore, it has been regarded as more favourable to have a court that understands the predominant languages of witnesses and documents to hear the case.

---

[43] *Phillips v Eyre* (1870) LR 6 QB 1, 28-29
[44] *Dicey, Morris & Collins: The Conflict of Laws*, 15th ed. (2018) at [34-084]

45. In the present case, all agreements involved were written in English and the Plaintiffs are U.S. citizen/company so the Plaintiffs' testimonies will also, presumably, be in English. This should pose no difficulty for courts in Hong Kong as the jurisdiction uses English as one of their official languages.

46. Further, it must be noted that all Defendants are Hong Kong citizen/companies. Their connection with Hong Kong means that there is a real possibility that testimonies given and documents produced may be in Chinese. If the U.S. courts are to deal with such testimonies and documents, translation is certainly required. There would be difficulty in arranging translation services and the accuracy may also be open to challenge by parties.

47. On the other hand, Hong Kong courts operate a bilingual system. According to the Judiciary of Hong Kong, "*Cases can be conducted in either Chinese or English. If a party chooses Chinese, he or she should make this request to the Listing Judge at the date fixing session. If approval is granted, a bilingual Judge will be arranged to conduct the trial.*"[45] As such, Hong Kong courts would be a more suitable forum to deal with the case if the Defendants or their witnesses are to give testimonies in Chinese, and their documents produced are written in Chinese.

III. *Location of witnesses and documents*

48. As technology has developed and giving testimonies while located overseas has become possible, the factor of the location of witnesses and documents has become of less significance.[46] Despite such lessened significance, it is still relevant in determining the suitable forum.

49. As discussed above, since the Plaintiffs are from the U.S. and the Defendants are from Hong Kong, it makes a balanced case with regard to the location of witnesses.

---

[45] Hong Kong Judiciary, https://www.judiciary.hk/en/court_services_facilities/hc.html
[46] *The Conflict of Laws in Hong Kong*, 3rd ed. (2017) at [3.100]

14

I note that there has not been a full list of witnesses available from either party. I also note that it may be difficult for witnesses to travel to another country due to the current pandemic.

50. Meanwhile, the whereabouts of the originals of the documents may not be of much relevance either. I have perused the agreements exhibited in the present case and confirmed those were signed digitally and not by the parties' hands, nor is there any dispute as to the authenticity of these documents. However, there may be other relevant documents to be discovered throughout the litigation, such as hard-copy documents, correspondence, notes, or electronically stored information in the possession, custody, or control of the officers, directors, employees, and/or agents of the relevant Hong Kong entities. Therefore, this factor may favour Hong Kong.

## IV.  *Location of relevant assets*

51. This factor is also a question of fact which relates to the Defendants' assets available for enforcement of judgment if the Plaintiffs obtain a judgment against them.

52. Under Hong Kong law, it has been decided that the location of relevant assets would affect the choice of forum, and the courts would be prepared to allow a foreign proceeding to continue if it is shown that a defendant has his assets in that other jurisdiction.[47]

53. The Defendants in the present case are from Hong Kong, and there is no evidence that they have substantial assets in the U.S. that would be available for enforcement of any judgments that may be obtained from the U.S. courts. On the contrary, subject to evidence, there is a higher probability that the Defendants have substantial assets in Hong Kong that would be available for enforcement if the Plaintiffs succeed in their claims.

---

[47] *Choi Sai Yiu v Widepower Ltd* [1994] 3 HKC 274, 283C-F

54.    While the question of enforcement is another factor to be discussed below, I am of the opinion that Hong Kong would be the more appropriate jurisdiction to hear the case in this regard.

## V.    *Geographical centre of gravity of the parties' relevant dealings*

55.    The geographical centre of gravity is also a question of fact.

56.    As pleaded in paragraph 8 of the Amended Complaint and discussed above, the Plaintiffs allege that a substantial part of the events and omissions took place in the State of Georgia, and the Defendants actively availed themselves in the State of Georgia. There is no allegation that any of the events took place in Hong Kong. But, the Defendants' principal place of business is in Hong Kong and respective bank accounts may be located there. And the most significant deviation is the Defendants' alleged breach of fiduciary duties to file papers with relevant Hong Kong authorities, which took place in Hong Kong.

57.    The overall conclusion for this factor, based on Plaintiffs' allegations and the complaint's exhibits, is that the geographical centre may be in the U.S. However, other information as noted above may balance this factor out for Hong Kong. Nonetheless, I stress that the geographical centre of gravity is less significant in affecting the *forum conveniens*, as the alleged torts and breaches do not involve geographically sensitive elements which would be more relevant in negligence claims or other jurisdictionally-sensitive claims.

## VI.    *Enforceability of judgment outside the jurisdiction which heard the case*

58.    This factor concerns whether a judgment obtained by the Plaintiffs could be effectively enforced against the Defendants.

59.    As I mentioned above, all Defendants are Hong Kong citizen/companies. It is also noted that one of the Defendants, Wing Luen Knitting Factory Ltd, has a factory in the People's Republic of China ("PRC").

60.     If the Plaintiffs are to proceed with the present litigation in the U.S., the Plaintiffs will obtain a U.S. judgment if they succeed. They will then need to enforce the judgment in Hong Kong against all Defendants. Enforcement of foreign judgments in Hong Kong is governed by the Foreign Judgments (Reciprocal Enforcement) Ordinance (Cap. 319) of the laws of Hong Kong. Under the Foreign Judgments (Reciprocal Enforcement) Ordinance (Cap. 319A), the U.S. is not one of the countries which Hong Kong would recognise and enforce its judgments.[48] Therefore, even if the Plaintiffs succeed in the U.S. and obtain judgment against the Defendants, they will not be able to obtain any effective remedies at the end.

61.     Contrarily, if the Plaintiffs succeed in Hong Kong courts, there will be no issue of enforceability in Hong Kong. In addition, there is a reciprocal enforcement agreement between Hong Kong and PRC that would enable the Plaintiffs to enforce a judgment against Wing Luen Knitting Factory Ltd. should they succeed.[49] There is also a provision facilitating a judgment creditor of a Hong Kong judgment to enforce it in the PRC.[50]

62.     In summary, I opine that the better enforceability of a Hong Kong judgment with respect to the Defendants in the present action justifies Hong Kong being the *forum conveniens* with respect to this factor.

## VII.   *Conclusion on choice of forum issues*

63.     To conclude on the question of choice of forum, I am of the opinion that the conclusions on each connecting factor justifies Hong Kong being a more suitable forum to hear the claims that I have discussed above.

---

[48] Foreign Judgments (Reciprocal Enforcement) Order (Cap. 319A), First Schedule and Second Schedule
[49] Mainland Judgments (Reciprocal Enforcement) Ordinance (Cap. 597)
[50] Ibid., s.21

64. Further, I am of the opinion that personal jurisdiction is proper over all parties in Hong Kong and that Hong Kong courts could rule on all substantive claims which I have discussed above.

65. The majority of claims in the present case is predicated on tortious acts (namely fraud, conversion, breach of fiduciary duties as directors, and tortious interference), whereas the claim for breach of contract only takes up a very small portion of the Plaintiffs' entire complaint. I am of the opinion that Hong Kong courts would view it as more logical to accept the whole case being heard in a Hong Kong court, in light of the matters I have discussed above.

**F.  Conclusion**

66. I believe that I have given all my opinions on the matter as instructed. Should there be any further queries, I will be more than happy to provide further opinion upon further instructions.

Dated this the 20th day of February, 2022.

I so advise,

Hylas Chung

Barrister-at-law,
Hong Kong