IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KANOPY HOLDINGS, INC. and
CHRISTOPHER RORK,

     Plaintiffs,

               v.

WL GROUP LTD, PO CHIU YUEN, and
WING LUEN KNITTING FACTORY LTD.,

     Defendants.

Civil Action No.
1:21-cv-03304-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants WL Group LTD, Po Chiu

Yuen, and Wing Luen Knitting Factory LTD.'s motion to dismiss [ECF 22] and

Plaintiffs Kanopy Holdings, Inc. and Christopher Rork's (together, Kanopy)

motion for leave to file a Second Amended Complaint [ECF 27]. After careful

consideration of the parties' briefing, the Court **GRANTS** Defendants' motion to

dismiss and **DENIES** Plaintiffs' motion for leave to amend.

## I.    BACKGROUND

The following facts are treated as true for purposes of this motion.[1] In June

2017, Defendants Po Chiu Yuen and WL Group Ltd. (WL Group) and Plaintiff

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the
motion to dismiss stage, all well-pleaded facts are accepted as true, and the
reasonable inferences therefrom are construed in the light most favorable to
the plaintiff.").

Christopher Rork formed Kanopy Baby, Inc., a seller of childrenswear, and incorporated it under the laws of Delaware.[2] Rork and Yuen served on the board of directors of Kanopy Baby.[3] In May 2018, WL Group and Yuen incorporated Kanopy International in Hong Kong.[4] WL Group and Yuen served on Kanopy International's board of directors.[5]

Between October 2018 and May 2019, Defendants and Rork negotiated a corporate restructuring of Kanopy Baby and Kanopy International as subsidiary entities of a newly formed holding company, Kanopy Holdings, Inc.[6] In May 2019, prior to the completion of the restructuring, WL Group and Yuen informed Rork that they wished to divest their shares in Kanopy Baby and Kanopy International due to a vendor requirement ( by Carter's, Inc.) that they divest majority interests in competing brands.[7] Subsequently, Rork identified Zheijiang Semir Garment Co. Ltd. (Semir) as a potential investor to assume the shares of WL Group and Yuen.[8]

---

[2]   ECF 9, ¶¶ 10–12.

[3]   *Id.*

[4]   *Id.*

[5]   *Id.* ¶ 13.

[6]   *Id.* ¶ 17.

[7]   *Id.* ¶ 20.

[8]   *Id.* ¶ 21.

This investment would allow Kanopy Baby and Kanopy International to continue operations without the further involvement of WL Group and Yuen.[9]

On May 19, 2019, WL Group, Yuen, and Rork entered into an agreement (Kanopy Framework Agreement) to facilitate WL Group and Yuen's divesture and create Kanopy Holdings.[10] Under the Kanopy Framework Agreement, WL Group and Yuen would exchange their shares in Kanopy Baby and Kanopy International for Rork's payment of $3,000,000.[11]

In October 2019, following the creation of Kanopy Holdings, WL Group, Yuen, and Rork entered into two agreements, a Share Exchange Agreement (SEA) and a Share Purchase Agreement (SPA).[12] Under the SEA, WL Group and Yuen would transfer their interests in Kanopy Baby and Kanopy International to Kanopy Holdings; after this transaction, under the SPA, Rork would transfer Yuen and WL Group the $3,000,000 contemplated by the Kanopy Framework

---

[9]    *Id.*

[10]   *Id.* ¶ 23.

[11]   *Id.* ¶ 24.

[12]   *Id.* at 5.

Agreement.[13] Wing Luen Knitting Factory LTD (WL Knitting) was not a party to either agreement.[14]

In November 2019, WL Group, Rork, and Kanopy Holdings executed an addendum to the above agreements which delayed their closing and reduced the purchase price of the WL Group's and Yuen's shares by $500,000.[15] Shortly after the completion of this agreement Semir decided to terminate its agreement to invest in the Kanopy entities.[16]

On November 16, 2021, Kanopy filed its Amended Complaint (FAC), asserting ten claims against Defendants: breach of contract, fraud, fraudulent misrepresentation, conversion, fraud in sales of securities, breach of fiduciary duty, tortious interference with business relationships, indemnity, punitive damages, and attorney's fees. Kanopy alleged that Semir declined to invest because of the actions and inaction of Defendants.[17] On February 28, 2022, Defendants filed a motion to dismiss.[18] Rather than responding to Defendants'

---

[13]   *Id.*

[14]   *Id.*

[15]   ECF 9, ¶ 43.

[16]   *Id.* ¶ 45.

[17]   *Id.* at 1.

[18]   ECF 22, at 1.

motion to dismiss, on May 5, Kanopy filed a motion for leave to amend its FAC. [19]

Kanopy attached its proposed Second Amended Complaint (SAC) to the motion.[20]

## II.    DEFENDANTS' MOTION TO DISMISS

### A. Applicable Legal Standards

To withstand a motion to dismiss for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am.*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint fails to state a claim when

it does not "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 555–56 (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)) (noting that "[f]actual allegations must be enough to raise a right

to relief above the speculative level," and the complaint "'must contain something

more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action'") (cleaned up). *See also Ashcroft v. Iqbal*, 556 U.S. 662,

680–85 (2009); *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187–88 (11th Cir. 2002)

---

[19]    ECF 27.

[20]    *Id.*

(stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal").

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

The Federal Rules of Civil Procedure require a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Complaints that violate Rule 8(a)(2) . . . are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Generally, shotgun pleadings are identifiable not from what they contain but from what they lack; a "shotgun" pleading is one that "fail[s]… in one way or another, to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. Most commonly, this occurs where the plaintiff's complaint contains "multiple counts [and] each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1322. Additionally, shotgun pleadings

are often "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1323. The Eleventh Circuit has consistently held that it is decidedly "not the proper function of the courts in this Circuit to parse out such incomprehensible allegations." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020); *see, e.g., Jackson v. Bank of America, N.A.*, 898 F.3d 1348 (11th Cir. 2018); *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997). Rather, "a district court that receives a shotgun pleading should strike it … or dismiss [the] case." *Estate of Bass*, 947 F.3d at 1358.

### B. The FAC is a Shotgun Pleading

Kanopy's FAC is an example of an "all-too-typical shotgun pleading." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir. 1997). The FAC presents ten counts, each "incorporating by reference the allegations of its predecessor counts." *Weiland*, 792 F.3d at 1324. This creates a "situation where most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions." *Id.* Because each count incorporates by reference all of the Complaint's twenty-nine pages of factual allegations, in addition to all preceding counts, "a reader of the complaint must speculate as to which factual allegations pertain to which count." *Chudasama*, 123 F.3d at 1359 n.9. In this way, the FAC fails

to provide Defendants sufficient notice of the grounds upon which Kanopy's claims rest.

Further, Kanopy's FAC asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. Throughout its ten counts, Kanopy makes no effort to distinguish between the actions of the three Defendants, despite their markedly different roles and the fact that one of Defendants, WL Knitting, was not even a party to the agreements at issue in Counts I, II, IV, and V—the SPA and SEA.[21] Nonetheless, in all ten counts Kanopy claims all Defendants to be equally responsible for each alleged action.[22] Because the FAC fails to clarify which Defendant is responsible for which alleged harm, it is deficient under Fed. R. Civ. P. 8(a)(2).

Moreover, the confusion pervading Kanopy's FAC is particularly problematic considering that Kanopy's common law fraud and securities fraud claims require them to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) ("Securities

---

[21]   ECF 27-1.

[22]   ECF 9, ¶¶ 68-76.

fraud claims, like other types of fraud claims, have always been subject to [Rule 9(b)'s] heightened pleading requirements.").

As noted, Kanopy did not file a response in opposition to Defendants' motion to dismiss, so the motion is deemed unopposed and is granted.

### III.    KANOPY'S MOTION FOR LEAVE TO AMEND

Kanopy's proposed SAC fails to cure the defects of its predecessor. Although Rule 15(a) of the Federal Rules of Civil Procedure requires a district court to "freely give leave [to amend a complaint] where justice so requires," it is by no means an "automatic right." Fed R. Civ. P. 15(a)(2); *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). A district court may deny leave to amend where there is "substantial ground for doing so, such as . . . futility of amendment." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). Denying leave to amend is "justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). Kanopy's proposed SAC is futile because, like its predecessor, it is an impermissible shotgun pleading and, therefore, fails to state a claim.

Although the SAC balloons from forty-six to sixty-seven pages and adds forty-eight pages of exhibits, it does little more than repackage the allegations of the FAC.

Like the FAC, the SAC "commits the mortal sin of re-alleging all preceding counts," dooming it to the same fate—dismissal. *Weiland*, 792 F.3d at 1323. As in the FAC, all counts of the SAC incorporate the complaint's sixty-seven paragraphs of factual allegations as well as all preceding counts. Consequently, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). A defendant faced with such an imprecise complaint cannot possibly be expected to frame a responsive pleading. *Id*.

Even if the SAC were not afflicted by the defect of duplicative, inconsistent allegations, its nine counts are replete with conclusory and vague claims. *Vibe Micro, Inc.*, 878 F.3d at 1294; *Weiland*, 792 F.3d at 1323. For example, in Counts IV and V, Kanopy makes several conclusory allegations, such as that Defendants "made [false] representations as an inducement to Plaintiffs to enter into the Stock Exchange Agreement," and "made representations with the intention and purpose of deceiving [Plaintiffs]."[23] Although Fed. R. Civ. P. 9(b) permits "conditions of a person's mind [to] be alleged generally" for fraud claims, Kanopy's pleadings fail to meet this lenient standard by neglecting to include specific facts that might even

---

[23]   ECF 27, ¶¶ 100–106.

"generally" point to Defendants' intent to defraud Plaintiffs. *See Mizzaro*, 544 F.3d at 1237.

These two counts are not alone in their groundlessness. This Court would have to make several intermediate assumptions to conclude that the SAC states a claim and may survive dismissal. The Court is unwilling to go to such lengths to save Kanopy's shotgun pleading. Pleadings "must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004).

The Eleventh Circuit has "time and again…held that a District Court retains authority to dismiss a shotgun pleading on that basis alone." *Jackson*, 898 F.3d at 1357. Shotgun pleadings "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants [and] the court." *Cramer*, 117 F.3d at 1263. Because Kanopy's proposed SAC is likewise an impermissible shotgun pleading, granting leave to amend would be futile.

## IV.   CONCLUSION

Defendants' motion to dismiss [ECF 22] is **GRANTED.** Kanopy's motion for leave to file a Second Amended Complaint [ECF 27] is **DENIED**. Kanopy's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Within 14 days of this Order, Kanopy may file a second motion for leave to file a Second Amended Complaint, attaching a revised proposed Second Amended Complaint consistent with this Order. If Kanopy does not do so, the Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED** this 20th day of September, 2022.

Steven D. Grimberg
United States District Court Judge